190      247
206      ²433

# The German-American Title and Trust Company *v.* The Citizens' Trust and Surety Company, Appellant.

*Statute of frauds—Guaranty—Building contract.*

Where a builder in consideration of advances by a corporation signs an agreement in writing to convey ground rents to the corporation and to furnish the bond of a surety company guaranteeing the completion of the buildings on the land out of which the ground rents issued, the bond of the surety company given in pursuance of the agreement is not rendered invalid by the fact that the agreement signed by the builder was not signed by the corporation which made the advances.

*Guaranty—Completion of building contract—Ground rents.*

Where advances have been made for a building operation, in consideration of the conveyance of ground rents on the land to be improved and of the furnishing of a bond to insure the completion of the buildings, the measure of damages in an action upon the bond is the difference in the market value of the ground rents if the buildings had been completed, and their value with the buildings in the incompleted state in which they were left.

Argued Jan. 20, 1899.   Appeal, No. 304, Jan. Term, 1898, by defendant, from judgment of C. P. No. 4, Phila. County, Dec. T., 1894, No. 211, on verdict for plaintiff.   Before STERRETT, C. J., GREEN, WILLIAMS, McCOLLUM, MITCHELL, DEAN and FELL, JJ.   Affirmed.

Assumpsit upon a contract of guaranty.   Before WILLSON, J. The facts appear by opinion of the Supreme Court.

The court charged in part as follows:

[They say that that contract was a fraudulent device which was adopted after the arrangement was made with the defendant company; that it was changed; that a date was inserted for the purpose of making it conform to the language of the contract which the plaintiff and defendant had entered into. That is a very serious charge, of course. It is, however, one which you are to settle upon the evidence, and I do not propose to undertake an analysis of the evidence, as it may bear on that point.] [8]   [I may say, however, this, that it does strike me, reasoning upon probabilities, that a company like the defendant would hardly have been likely to execute a contract such

as that which is sued upon, whereby they assumed a contingent liability to the extent of $30,000, without seeing the contract to which reference was made, and which was a substantial part of the arrangement which they entered into.] [9]   [I should think it very strange if any corporation, made up of men of reasonable intelligence, would have entered into a contract of that sort and that magnitude without knowing what the obligations were which they assumed.   That they should have taken the representations of anybody in regard to what was contained in it, would seem to me to be quite unnatural, in the way in which business men ordinarily act.   I confess it seems to me that the probabilities of the case altogether favor the idea that there was some contract of January 17, which this defendant saw.] [5] If the contract was a different one—if the plaintiff has substituted one contract for another, if there was a contract of January 17, which contained certain provisions different from those which are contained in the one which was made according to the plaintiff's claim here—the basis of the case—a contract different from that which the defendant acted upon in making the contract which is involved in this case, then the plaintiff cannot recover.   You are to take that question and settle it upon the evidence that you have heard.   If there was no contract between them which was binding, that is the end of the plaintiff's case.   If there was not a contract entered into between the plaintiff and defendant with reference to such a contract as the plaintiff has produced here, purporting to be under date of January 17, 1893, then the plaintiff must fail, and your verdict must be for the defendant.   [But, supposing you come to the conclusion, upon the evidence, that there was a contract dated January 17, and I say " dated " because it is not necessary that a contract should be made upon the day of its date, a contract may be dated as of a date anterior to the time when the contract is actually executed—if there was existing prior to the time when the plaintiff and defendant entered into the contract in question a contract of that date, January 17, 1893, between the plaintiff and Elkinton, which was the contract the plaintiff and defendant bargained about, if it was the contract which the defendant's settlement agreement, as it has been called, related to and called for, then that was sufficient.   If you come to the conclusion that the plaintiff has shown you that such a

contract existed, and that it was the contract which has been produced here, the question arises whether the plaintiff has shown circumstances under which it can claim compensation to the extent of the actual loss suffered by reason of the noncompletion of the buildings.] [10] In general terms, I may say to you, as it has been argued on behalf of the defendant, that if you see anything in this evidence which warrants you to infer that the plaintiff prevented the completion of the buildings by doing anything which it had not a right to do under its contract, or by failing to enter into reasonable arrangements which the insurer proposed, or the contracting party, Elkinton, or anybody who stood in his right, proposed, to enable the buildings to be completed, that would be a sufficient answer to the plaintiff's case. It would be obviously unjust for the plaintiff to say, " You must pay us $30,000, because these buildings were not completed," if you were of the opinion that the completion was prevented by the plaintiff. You have heard a great deal of evidence upon that point. I do not propose to enter into it in detail. The matter is fresh in your minds, and it is not long since you heard the witnesses testify, and a very short time since you heard the counsel argue upon the point. The plaintiff was not bound to pay any money to anybody in such a way or under any such condition as would violate its contract with Elkinton, and was not bound to do it in any way apart from the obligations of that contract, which would, in any way, imperil its rights as against the defendant. It had no right to vary the contract with Elkinton certainly in any material point and still maintain its claim against the defendant, the insurer. The defendant insured the plaintiff against loss occurring from noncompletion of the buildings under a certain contract. That is the form of the contract the defendant entered into. If other arrangements had been made, if the plaintiff had entered into arrangments with other people of a different character from those which were provided for in that contract, either different people from Elkinton or those who stood in his shoes, and there had been a failure to complete the building by reason of that fact, then the defendant could have said, " You altered the contract ; we did not insure against the noncompletion of the building by somebody else, we insured against the noncompletion of the building by Elkinton." That is the general principle

which applies to this second question which I am now stating to you and desiring to put before you in such a way that you will clearly understand it.   There was a good deal of negotiation evidently.   [There was first, you will remember, after Elkinton failed, an assignment by him of his contract to a man by the name of Goodchild, and Goodchild seems to have gone on and done some work, and I do not know but what you may infer from the evidence that he did it with the knowledge and approval of all parties concerned, with the exception possibly of Elkinton, but that had not gone on very long before Elkinton said, " That assignment you got from me you got by fraud, and I notified the German-American Company that it must not pay over any money which is due to me under that contract, because this assignment was obtained of me by fraud." If they received any such notice as that, their own interests certainly justified them in declining to pay any money.] [11]   An instrument which is obtained from one who has rights to money by fraud can be set aside by him, and if he notifies the one who is to pay that he contests the validity of that assignment, then if the man who is to pay the money does it after such notice and it turns out subsequently that the assignment is a fraudulent one and invalid, he will have to pay it over again.   After that, matters went on with a good deal of negotiation, a good deal of letter writing, a great many interviews, seeing the officers of one company and the officers of another, and the man who has been called the counter security came in, and, according to some evidence, he stood in the way possibly of such an arrangement being made as might have carried the operation through successfully and without any very substantial loss, until finally a proposition was made, [if you believe the evidence of Mr. Staake, embodied in a formal paper, which was submitted to the defendant company, setting forth what the plaintiff company was willing to do, giving additional time and so on and so on.   According to his testimony, that proposition was not accepted by the defendant company.] [7]   They say they made one, which Mr. Staake, who was counsel for the company at the time, says would have been acceptable to the plaintiff if it had been, in point of fact, received, which he says was not the case, so far as he knew.   He says he never heard of it.   General Fisher said that the paper was never given to him, so far

as he remembers.  He certainly says he never heard of the prop-
osition.  Mr. Glaser says that he handed the paper in person to
General Fisher.  That was a proposition on the part of the de-
fendant which, if it had been received and accepted and acted
upon, would probably have relieved the parties from this un-
pleasant controversy.  That, however, was not carried out.  As
I have said, the plaintiff's representatives deny that they ever
had any notice of it, and they say that a proposition such as
they made and embodied in a formal instrument was not ac-
ceptable to the defendant.

That is substantially this whole case, so far as the right of
the plaintiff or the defendant to a verdict is concerned.  As you
see, it is a case of such a character as merits your careful and
candid consideration.  Whichever of these parties is in the
wrong—I do not mean wickedly wrong—but whichever of these
parties has failed to come up to the fair, proper business require-
ments of the contract which was entered into, if that contract
was entered into, as is alleged, should bear the consequences of
its act.

If your judgment upon the whole evidence in the case, in
view of what I have said to you, be that the plaintiff has failed
to make out a case, then you have nothing to do but render a
verdict for the defendant.  If, however, you shall be of the opin-
ion that the plaintiff has made out a case—has shown that the
contract of the defendant was broken, and broken without any
cause—that the plaintiff did nothing which brought the loss
upon itself, then you would reach the question as to how much
the plaintiff is entitled to have in the way of a verdict.  The
language of the contract between the two parties, in substance,
is that the defendant should insure the plaintiff against actual
loss arising from the noncompletion of the buildings by Elkin-
ton.  What is actual loss ?  Actual loss is what the plaintiff
really lost.  It is obvious from the nature of the transaction as
I have rehearsed it to you, and as it has appeared from the evi-
dence in the case, the object was, so far as the plaintiff is con-
cerned, to get ground rents which had a solid basis, a basis which
would make them valuable as securities either to hold or to sell.
The contract between the plaintiff and Elkinton, if you believe
that the contract is what the plaintiff claims it to have been, the
contract referred to in the defendant's contract, was a contract

which called for the completion of the buildings on January 1, 1894. Without undertaking to say that if the buildings had been completed within a short time after that, that would not have been a substantial compliance with the contract, still, if they were not completed substantially about that time (and there is no evidence that they were ; indeed, the evidence is that they were not), then the plaintiff is entitled to be paid what was the actual loss in the value of these ground rents at the time of the breach—at the time when the buildings should have been completed—at or about that time. [Under the evidence in this case the way for you to come at that is to inquire what was the difference in the market value of those securities. You have heard the witnesses testify today upon that subject. There is no evidence to the contrary upon that point. Their evidence amounts substantially to this : that those ground rents would have been worth in the market for sale, either par or par less, say, five per cent, as one or two of the witnesses said, for expenses, commissions, negotiations, and so forth, if the buildings had been completed ; that in the condition in which the buildings were left they were worth a great deal less. Some of the witnesses put their value, if I remember rightly, not as high as $40,000, and some of them put them higher. Taking the highest valuation of market value which any of the witnesses put, the difference between the lower value and the higher value would be much larger than the defendant's liability in any view of the case.] [12]

[If you believe that the plaintiff's loss, upon the whole evidence, taking the standard which I have given you, was as great as $30,000, which was the extreme limit of the defendant's liability, then your verdict should be for the plaintiff for that sum, with interest from the time when it became due under the terms of the contract. If the loss was less than that, then the amount of your verdict would be that amount, whatever it is, with interest from the time when the liability accrued under the terms of the contract.] [13]

Verdict and judgment for plaintiff for $37,400. .Defendant appealed.

*Errors assigned* among others were (5, 7–13) above instructions, quoting them.

*Samuel Gustine Thompson*, with him *David Jay Myers*, for appellant.—Clearly this paper offered in evidence was not a contract executed by the company, which Elkinton could have enforced at the time defendant below issued its agreement to become surety.  This alleged agreement provides for a resale of certain ground rents, and as it was not signed by the plaintiff below, or in any manner executed, Elkinton could not have enforced it in regard to such sale.  It relates to a sale of chattels real, and under the statute of frauds, unless signed by the plaintiff below, was not enforceable by Elkinton, and was not susceptible of ratification except by writing, which was not done: Jennings v. McComb, 112 Pa. 518; Nippenose Mfg. Co. v. Stadon, 68 Pa. 256; First Nat. Bank v. Hoch, 89 Pa. 324; Farmers' Bank v. McKee, 2 Pa. 318; Brightly's Equity, p. 105.

A surety is entitled to the protection of the law, and equity holds him discharged when he who seeks to bind him does not observe the utmost good faith: Frisch v. Miller, 5 Pa. 310; Hibbs v. Rue, 4 Pa. 348; Cope v. Smith, 8 S. & R. 110; Law v. East India Co., 4 Vesey, 824; Miller v. Stewart, 9 Wheaton, 680; Hutchinson v. Woodwell, 107 Pa. 509; Watts v. Shuttleworth, 7 Hurl. & Nor. 353; Henderson v. Ardery, 36 Pa. 449; Nesbitt v. Turner, 155 Pa. 429; Bensinger v. Wren, 100 Pa. 500.

As the contract of defendant below was executory until the matter was settled, when a policy was to issue, defendant below was entitled to notice of the settlement and a copy of the contract: Coe v. Buchler, 110 Pa. 366.

When a surety makes a payment by reason of his contract of suretyship, he is, ipso facto, subrogated to all the rights of the obligee: Rittenhouse v. Levering, 6 W. & S. 190; Fleming v. Beaver, 2 Rawle, 128; Mosier's App., 56 Pa. 76; Kyner v. Kyner, 6 Watts, 221.

*John G. Johnson*, for appellee.—Where a contract is wholly executory, the engagement of one party may be in writing and the other in parol: Grove v. Hodges, 55 Pa. 504; Carnegie Nat. Gas Co. v. Philadelphia Co., 158 Pa. 317.

The assent of the nonsigning party may be inferred from the circumstances: Flannery v. Dechert, 13 Pa. 505; Pratt v. Harding, 30 Pa. 525; Swisshelm v. Swissvale Laundry Co., 95 Pa. 367; Jennings v. McComb, 112 Pa. 518.

A sale of the ground rents would not have demonstrated the amount of the loss. Ground rents may be so badly secured, even with buildings completed, as to cause them to be worth less than par. Had the ground rents been sold for less than par, it would not have followed, necessarily, that this was owing to the noncompletion of the buildings. It might have been owing to the fact that they would not have been worth what had been paid for them, even though the buildings had been completed : Fairman v. Fluck, 5 Watts, 516 ; Jackson v. Farrell, 6 Pa. Superior Ct. 31 ; Andrews v. Hoover, 8 Watts, 239 ; Kountz v. Kirkpatrick, 72 Pa. 376 ; Trout v. Kennedy, 47 Pa. 387 ; Coffman v. Hampton, 2 W. & S. 377 ; Prescott v. Otterstatter, 79 Pa. 462 ; Mills v. East London Union, L. R. 8 C. P. 79 ; Pell v. Shearman, 10 Exch. Rep. 766 ; Joyner v. Weeks, L. R. [1891] 2 Q. B. Div. 31.

OPINION BY MR. JUSTICE FELL, March 13, 1899 :

The defendant agreed to insure the plaintiff against actual loss which might result to it, as a purchaser of ground rents upon unimproved land, by reason of the non-completion of buildings to be erected thereon by P. P. Elkinton. No policy was issued, but the settlement certificate was treated by both parties as a complete agreement. By the terms of this certificate a policy for $30,000, insuring the plaintiff against actual loss by reason of the non-completion of forty-two buildings prior to January 1, 1894, in accordance with an agreement between Elkinton and the assured, dated January 17, 1893, was to be issued when the transaction was settled and the deeds recorded. The agreement of January 17, 1893, referred to, provided for the sale of the ground rents, the construction of the buildings, the manner of payment, and for a re-sale of the ground rents to Elkinton at his option upon certain terms. This agreement was signed by Elkinton only, but it was accepted and acted upon by the plaintiff, and the provisions binding the plaintiff were fully carried out. The plaintiff advanced $116,000, the buildings were not completed, and the plaintiff's actual loss was largely in excess of the amount of the insurance.

In September, 1893, Elkinton, without the assent or knowledge of the plaintiff, assigned his contract to Goodchild, and soon afterward the work on the buildings stopped. Subse-

quently Elkinton claimed that the assignment had been procured from him by fraud. He filed a bill in equity, and obtained a special injunction, which was afterward dissolved. The bill however was proceeded with, and the controversy was not closed for several months thereafter. A balance due by the plaintiffs was claimed by Elkinton, by Goodchild and by the defendant. Negotiations for the adjustment of the difficulties which had arisen and for the completion of the work were pending for some time, but were finally abandoned, and the ultimate loss to the plaintiff was $48,000.

Two of the defendant's contentions at the trial (1) that the agreement dated January 13, 1893, was not executed until after May 20, the date of the settlement certificate, and (2) that the plaintiff, after the assignment by Elkinton, unjustifiably refused to pay to Goodchild or to the defendant, depended on the facts proved, and they were decided by the jury adversely to the defendant. We see no ground for a just criticism of the manner in which the questions of fact were submitted, or of the statement of the law applicable thereto.

It remains to consider whether the failure of the plaintiff to sign the agreement entered into with Elkinton precluded it from recovering on the contract of insurance with the defendant, and whether the proper rule for measuring the damages was given the jury.

It was contended by the defendant that, as the agreement of January 17, 1893, related to the purchase and sale of real estate, and was not signed by the plaintiff and not ratified by writing, it was invalid, and could not have been enforced by Elkinton, or by his surety in case of subrogation to his rights, and that the defendant's contract of insurance, which was based upon this agreement, was not binding upon it. What Elkinton agreed with the plaintiff to do was to convey to it the ground rents, to build on the ground so as to secure the rents, and to furnish the bond of a trust company guaranteeing the completion of the buildings in accordance with plans to be approved by the plaintiff. In pursuance of this agreement he procured the defendant's contract to insure the completion of the buildings, made the conveyances and received the purchase money. If a policy had been issued it would not have taken effect until the conveyance was made. The insurance related to what re-

mained to be done after the conveyance, the completion of the buildings, and to that part only, of Elkinton's agreement. It was not an insurance that he would convey, but that after conveying he would build. It did not cover any obligation on the part of the plaintiff, but the obligation of Elkinton only, as fixed by a then existing agreement between him and the plaintiff.

We find no error in the statement of the rule for the measure of damages. The jury were limited to the actual loss in the value of the ground rents, not exceeding the amount of the insurance, and were instructed that that loss would be represented by the difference in the market value of the ground rents if the buildings had been completed as provided by the agreement, and their value with the buildings in the incompleted state in which they were left. We know of no better rule than this in such a case, and of none more just to the defendant. A sale of ground rents issuing out of land on which were uncompleted buildings would furnish a very unsatisfactory and inconclusive test of their value. A sale would be one means of fixing a value with the buildings unfinished, but the ground rents if not well secured, even with completed buildings, would have been worth less than par. The plaintiff was under no duty to take the chance of a greater loss by exposing its property to sale with the buildings unfinished.

The judgment is affirmed.