## TRAINOR CO. v. ÆTNA CASUALTY & SURETY CO.
### No. 15318.

District Court, E. D. Pennsylvania.
Feb. 2, 1931.

Motion for Rehearing Denied June 18, 1931.

David L. Ullman, of Philadelphia, Pa., for plaintiff.

J. W. Henderson (of Rawle & Henderson), of Philadelphia, Pa., for defendant.

KIRKPATRICK, District Judge.

This is a suit by an obligee against the surety upon a bond for the completion of a building operation. The trial was to the court without a jury.

### Findings of Fact.

1. The Trainor Company, plaintiff, on October 13, 1927, conveyed certain real estate to Copley Homes, Inc., a corporation organized to carry out a proposed house building operation. The details are unimportant, but it may be taken (a) that as a result of the transaction Copley Homes owed the Trainor Company $28,000; (b) that this sum was a part of the purchase price of the real estate; and (c) that it was all profit to the Trainor Company, accruing to it without any capital investment on its part, simply by turning the land over to Copley Homes at an advance over the price at which it was able to buy it for itself. This last fact was not disclosed to the defendant at any time prior to the execution of the bond in suit.

2. In order to finance its building operation, Copley Homes borrowed money from the Sun Mortgage Company and its subsidiary, Realty Bond & Finance Corporation, two corporations organized to finance building operations, giving to the Sun Mortgage Company as collateral security a separate first mortgage of $4,500 upon each of the 52 lots comprising the operation; and, to Realty Bond & Finance Corporation, a blanket second mortgage of $88,000 covering the entire tract, which mortgage had a release clause of $2,000 per house. The amounts borrowed were less than the amounts of the mortgages placed and assigned as collateral security, so that the net result of the financing was, in substance and without entering into all of the details, that each of the lots had against it a first mortgage of $4,500 and what amounted to a second mortgage of $2,-000, and that there was a small equity in the first mortgage (which may be disregarded) and an equity in the second mortgage over and above the amount borrowed upon it amounting to approximately $636 per lot. Copley Homes paid the Trainor Company the $28,000 due it by giving to the Trainor Company its note for that amount and assigning to it as collateral the equity in the second mortgage.

3. On the day of the general settlement (October 13, 1927) the bond in suit was executed by Copley Homes as principal and the Ætna Casualty & Surety Company, the defendant, as surety. The obligees were the Land Title & Trust Company (through the medium of which the Sun Mortgage Company made its loan, and which was to act as its agent in handling the funds and paying contractors as the work progressed), Realty Bond & Finance Corporation, and the Trainor Company, the plaintiff. The bond had three conditions, the first of which was, in substance, "that, if within ten months within the date hereof each of the lots * * * shall be fully improved and completed with a building, together with the other improvements (such as paved streets, sidewalks, driveways, gas, water, sewerage, etc.,), in keeping with and as shown by the aforesaid Plans, Specifications, and Conditions, Building Plats and Surveys, * * * then, in the event that all of the above-and below-mentioned conditions are fully performed, this Bond shall be Void; otherwise it shall remain in full force and effect in law."

4. Copley Homes immediately began building 52 houses on the lots. On August 13, 1928, the date for completion fixed by the bond, 24 houses had been fully completed. The remaining 28 were not far from completion, but sufficient work remained to be done upon them to require a finding (and I so find) that they had not been completed in accordance with the plans and specifications either fully or substantially.

5. Neither the plaintiff nor Copley Homes nor the defendant ever completed the operation. It was, however, ultimately completed on December 27, 1929, by the Sun Mortgage Company, holder of the first mortgages.

6. The value of the 28 uncompleted houses, as of August 13, 1928, was $6,700 each. This amount is in excess of the sum of the amount of the plaintiff's mortgage on each house and all prior liens. In arriving at this value, in addition to the testimony of expert witnesses, the following facts were considered and may be taken as found:

(a) The work actually remaining to be done consisted principally of installation of plumbing accessories such as spigots and shower curtains and rods, painting (which was about 75 per cent. complete), papering, installation of gas ranges and minor details in connection with carpenter work, plastering, and brickwork. The record of work remaining to be done made by the representative of the Land Title Company about August 13, 1928, is accepted as substantially correct.

(b) The original contract price for full completion of all the houses amounted to about $4,200 for each house (disregarding the slightly larger price for the corner houses). This was the price of building and did not include cost of land or financing.

(c) The price of the land without the houses to the Trainor Company was $76,000 or about $1,461 for each lot, and to Copley Homes $104,000 or $2,000 for each lot.

(d) Subsequent to August 13, 1928, the total sum of $26,071 was spent in completing the operation. Of this amount $4,000 went for street improvements and the balance, or $22,071, was spent in completing the houses. This would amount to approximately $788 for each house. How much of the total amount as expended went for work contracted for or actually installed prior to August 13, 1928, the testimony does not disclose. In addition, it is probable that some of the expenditures went for repairs to or replacement of work already done, since an operation which is allowed to stand uncompleted for so long a period is bound to deteriorate to some extent. It is also probable that the amount spent for completion under the new contract represents a smaller proportion of the whole work than an equal amount in the original contract price would have represented.

(e) Twenty of the completed houses were sold for the price of $7,950 each, 10 before August 13, 1928, and 10 after. The plaintiff concedes that the completed houses as of that date were worth $7,950 each.

(f) During 1928, 1929, and 1930 the value of real estate, generally and in the locality in which this operation was, declined steadily.

7. On July 24, 1929, 28 houses being still uncompleted, the defendant made an agreement with the Sun Mortgage Company, which effected the settlement of a number of matters arising out of various surety bonds which the defendant had written for operations in which the Sun Mortgage Company and its subsidiaries were interested, including the Copley Homes operation. One of the terms of that agreement was that the Sun Mortgage Company would complete the Copley Homes operation in accordance with plans and specifications. Thereafter the Sun Mortgage Company did complete the operation, as has been found. In entering into the settlement and in completing the houses the Sun Mortgage Company did not act as agent or in any other capacity for the plaintiff.

8. On January 25, 1930, the Sun Mortgage Company foreclosed its first mortgages buying in all the properties for the sum of $50 and thus wiping out the second blanket mortgage of the Realty Bond & Mortgage Company and the equity of the Trainor Company therein.

9. The plaintiff has received $13,026.02 from Copley Homes on account of its obligation to pay $28,000.

### Conclusions of Law.

1. The bond is a bond of guaranty, and, there having been a breach, the plaintiff is entitled to judgment.

2. The measure of damages in this case is so much of the difference between the value of the property as of August 13, 1928, with the houses uncompleted, and the value it would have had on that date had the houses been completed as would have been necessary to pay the plaintiff's mortgage debt as well as all prior liens. Since the value of the property as of August 13, 1928, was more than the sum of the plaintiff's mortgage and prior liens, the plaintiff is not entitled to any substantial damages.

3. The plaintiff was not bound to disclose to the defendant the fact that the $28,-000 of purchase price owing to it by Copley Homes represented profit made by it without capital investment and arising from merely increasing the price of land which it was in a position to acquire at a lower figure.

4. The so-called settlement agreement of July 24, 1929, had no effect whatever upon the legal rights of the parties so far as they are involved in this suit.

### Discussion.

The first question is as to the measure of damages. In order to reach the essence of this question, the facts found may be condensed into the following statement:

The plaintiff is the obligee upon a bond given by the owner of certain real estate, the

condition of which is that a building operation thereon will be completed by a certain date. The plaintiff's interest in the property consists of what amounts to a third mortgage. The buildings were only partially completed on the day for completion. The property with the operation in its uncompleted state on that day had a value which exceeded the sum of the plaintiff's mortgage and prior liens.

The defendant's position is that, since the value of the property when the breach occurred was sufficient to cover the plaintiff's third mortgage and all prior liens, the plaintiff is entitled to nominal damages only. The plaintiff's position is that, regardless of the relation between the value of the property with the uncompleted operation on it and the amount of its mortgage and prior liens, it is entitled to recover the difference between the value of the property as it was at the time of the breach and as it would have been had the buildings been fully completed in accordance with the contract on that day. It may be noted that, in spite of this contention, the plaintiff in his statement claims only so much of the difference as will, with what he has been paid, equal the amount of the money due it and secured by its mortgage.

■■■ In fixing the amount of money damages for breach of contract, the general purpose of the law is to give compensation—that is, to put the injured party in as good a position as he would have been if the party in default had kept his contract. A limitation upon this rule is that the plaintiff may not ordinarily recover compensation for injurious consequences of the breach which he might reasonably have avoided. Implicit in the rule is the policy of the law that a plaintiff may not through the medium of damages improve his position beyond his injury, or make a profit from the defendant's fault or misfortune.

Applied to building contracts these general principles allow the owner of the land, in case of a default by the builder, after partial performance, to recover the difference between the value of his property with the building in its uncompleted state and its value as it would have been had the contract been fully performed. Or, if completion is reasonably possible and does not involve unnecessary economic waste, then as a method of ascertaining his damages he may complete the building at his own expense, and recover the reasonable cost of so doing. In either case, if the builder has given bond, the owner's recovery against the surety would be the same as against the principal.

A mortgagee of land upon which buildings are to be erected is, however, not in the same position as the owner. Except as it affects the security for his loan he has no genuine interest in the completion of the work. Obviously, the contention of the plaintiff in this case that the mortgagee like the owner is entitled to the difference in the value of the completed and the uncompleted job, regardless of the value of the land or the amount of the mortgage, is unsound. If that were so, the holder of a mortgage secured ten times over by the value of the land alone, and having no other interest, could recover from a surety large damages for the breach of a contract to build an expensive structure upon it. The fundamental principles and policy of the law above stated forbid such result.

True, there are cases in which mortgagees or their insurers have at their own expense completed the contract and been allowed the cost of so doing. Among these are Equitable Trust Co. v. National Surety Co., 214 Pa. 159, 63 A. 699, 6 Ann. Cas. 465, and Zane v. Citizens' Trust & Surety Co., 117 F. 814 (C. C. A. 3). In both of these cases, however, if the facts be carefully considered, it will be seen that the value of the mortgage was impaired or threatened by failure to complete. In the Equitable Trust Co. Case the completion by the obligee at its own expense of the contract of a subcontractor guaranteed by the surety was the means by which the ultimate damages were in all probability greatly reduced, since thus the disorganization of the whole operation and consequent extensive loss were avoided. In Zane v. Citizens' Trust & Surety Co., it is clear that the default impaired the value of the mortgage more than the penalty of the bond, which was the amount recovered. Even if the cost of completion should be in excess of the loss to the mortgagee, the mortgagee would not profit, since the buildings go upon the land of another, and all that he gets is security for his debt. In such case, the only question that might be raised would be whether completion by the mortgagee would result in unnecessarily increasing the damages to the defendant.

■ In the case at hand, however, we have a mortgagee who has elected not to complete, but who has sued for money damages. Parenthetically, it may be said that the operation never was completed by either of the original parties, so that the question whether time is of the essence does not enter into the case. Under the rule of compensation the

mortgagee can recover only to the extent that his interest in the subject-matter has been adversely affected by the breach. The weight of authority is to the effect that that is the amount by which the value of his mortgage has been impaired. Specifically, the amount is to be ascertained by finding the difference between the value of the houses as they were uncompleted at the time of the breach and their value as of that time if they had been then completed in accordance with the contract and allowing so much of this difference as, added to the uncompleted value, would equal the amount of the mortgage.

In Norway Plains Savings Bank v. Moors, 134 Mass. 129, a case of a guaranty bond, on all fours with the instant case, the court said: "The measure of damages is the difference between the value of the houses as they were in fact built, and the value they would have had if built in conformity to the agreement, or so much of this difference as would have been necessary, with the value of the houses as built, to have paid the mortgage debt and interest then due. * * *" And the court goes on to say that the time for determining these values was the time when the plaintiff did know or should with reasonable diligence have known of the breach.

In Province Securities Corporation v. Maryland Casualty Co. (Mass.) 168 N. E. 252, 257, the court said: "Except that, as the mortgagee holds the property for security only, he cannot recover more than the difference between the value of the property in the condition in which it is left and the amount due on his mortgage." The case was reversed, not because the court below had adopted an incorrect measure of damages, but because it accepted the price at the foreclosure sale as conclusive of the value at the time of the breach.

In the latter case the bond was an indemnity bond and not an absolute guaranty of completion. The plaintiff has made much of the distinction between these two classes of bonds, but, so far as I can see, there is no substantial difference in the measure of the damages. In the one case it is compensation measured by anticipated loss, in the other actual loss. In the case of a guaranty bond the right of action accrues upon the breach. In the case of an indemnity bond the plaintiff has no right of action until he actually has incurred a money loss; or, in other words, on a guaranty bond he must show loss or else be limited to nominal damages, while on an indemnity bond, if he fails to show loss, he will be out of court altogether.

Two New York cases (Kidd v. McCormick, 83 N. Y. 391, and Sachs v. American Surety Co., 72 App. Div. 60, 76 N. Y. S. 335) appear to state the rule as though the mortgagee is not limited by the extent of his interest, but it will be seen by reference to the later case of Schwartz & Co. v. Aimwell Co., 227 N. Y. 184, 124 N. E. 892, that the principle of damages for compensation only has not been disregarded. That case was a suit upon a bond of guaranty, and it was held that the complaint, which did not set forth loss to the plaintiff, failed to state a cause of action. The same is true of United Real Estate Co. v. McDonald, 140 Mo. 605, 41 S. W. 913. The point involved there was the failure of the plaintiff to show any difference between the work, completed and uncompleted, and what was said as to the measure of damages was necessarily dictum. In Stuart v. Carter, 79 W. Va. 92, 70 S. E. 537, L. R. A. 1918D, 1070, the only question was whether the plaintiff could sue on a guaranty bond before he had actually paid liens against the property, and, since he had sued to recover only the amount of the lien, the measure of damages was not involved.

In Folz v. Tradesmen's Trust, etc., Co., 201 Pa. 583, 51 A. 379, a suit on a bond of guaranty, the plaintiff had loaned the principal money to finance his contract with the city, and held no mortgage or other lien. After default the surety completed the contract. The recovery was for the amount of the bond, but, by reference to the earlier case of Folz v. Amweg, 191 Pa. 157, 43 A. 204, it will be seen that that was also the amount borrowed. It is also evident that, because of his default, the contractor was wholly unable to pay the plaintiff. In other words the plaintiff's recovery was the amount of his loss. The referee said (page 588 of 201 Pa., 51 A. 379, 382) that, whichever way the case was decided, "the losing party suffers a loss equal to the amount of the judgment." The value of the work in its uncompleted state is nowhere considered or mentioned, nor is it material, since the plaintiff had no lien.

A somewhat similar situation was presented in Union Trust Co. v. Citizens' Trust & Surety Co., 185 Pa. 217, 39 A. 886. In that case the plaintiff was the owner of the ground. It loaned a contractor $2,000 which was to be used for building two houses on the land, and took an indemnity bond with the defendant as surety to protect it against loss. The fact that the plaintiff raised the money by means of mortgages on the land is immaterial. The plaintiff's position was

not that of a mortgagee, but of an owner who had loaned money to the contractor. The damages allowed were the penalty of the bond which represented the plaintiff's actual loss. The court rejected the defendant's offer to show the value of the lots. Obviously this was not a relevant fact, since the plaintiff was not the holder of a debt secured by the land, and his loss was the money loaned to the contractor which had nothing to do with the land.

But the plaintiff argues that the mortgagee's interest in the subject-matter is not necessarily measured by the face value of his mortgage, that he has contracted for a mortgage secured by an adequate margin, that so secured his mortgage might conceivably in times of cheap money be worth a premium, and that for these reasons he is entitled to the full amount necessary to bring the property up to the value it would have had had the houses been completed, regardless of the amount of his mortgage. This argument has some merit. The trouble is that it is utterly impossible to do more than guess at an amount which will compensate the plaintiff upon this theory, or to avoid enriching him at the defendant's expense. Thus, if we should say that a mortgage ought to be secured by a margin of safety of 40 per cent. and allow him that amount as damages, the plaintiff, in a case in which the value of the property just equals the amount of the mortgage, might subsequently foreclose and have his original investment back, plus a profit of 40 per cent. already allowed as damages. Considerations of this nature no doubt have moved the courts to limit the plaintiff to so much of the difference in the value of the completed and uncompleted operation as will bring his mortgage up to its face value. In German-American Title, etc., Co. v. Citizens' Trust, etc., Co., 190 Pa. 247, 42 A. 682, the plaintiff's interest consisted of a ground rent. The measure of damages approved by the court in that case (the loss in the market value of the ground rents due to the failure to complete the buildings) obviously arose from the necessities of the situation. The general rule could not well be applied, since the plaintiff's lien did not have any face or principal value. There is no suggestion that the rule stated was intended to apply to anything other than ground rents, and (as applied to the facts of the instant case) the difficulties in the way of arriving at a fair market value for third mortgages secured by a margin, comparatively narrow at best, are obvious.

The fact in the instant case that nearly a year and a half after the breach the holder of the first mortgages foreclosed and wiped out the plaintiff's security does not affect the situation. Default in the first mortgages might have occurred at any time, even before the completion date. Even assuming that the houses had been completed in accordance with the contract, it is problematical whether, in the event of a default, it would have been wise for the plaintiff to have protected itself by bidding the amount of all the liens. Moreover, any number of things totally unconnected with the building operation or with the failure to complete the houses and not reasonably to be foreseen at the time of the giving of the bond might have intervened to depress the value of the property by the time the foreclosure took place. If the value of the property had suddenly increased after the breach, no one would suggest that such fact would affect the plaintiff's right to damages. The plaintiff could have completed and held the defendant for the cost. Zane v. Citizens' Trust & Surety Co., supra. It did not elect to do so, and very likely, in view of its position, would have gained nothing if it had. In such case the only sound and practically applicable measure of damages is that adopted by the courts as set forth herein.

The conclusions reached as to the measure of damages make it unnecessary to discuss in detail the other defenses raised. I have disposed of them in the findings of fact and conclusions of law. The breach being proved, the plaintiff will be entitled to nominal damages, and I therefore find for the plaintiff and fix the damages at $5.

Judgment may be entered accordingly.