## AMERICAN SURETY CO. OF NEW YORK v. GONZALES WATER POWER CO.* (No. 6179.)

(Court of Civil Appeals of Texas. San Antonio. April 2, 1919. Rehearing Denied April 23, 1919.)

1. CONTRACTS ⬅198(4) — CONSTRUCTION OF DAM—USE OF EXISTING BULKHEAD.

In action on contractor's bond for damages resulting from contractor's failure to complete a dam in accordance with agreement, the contract construed as contemplating the construction of a dam across the entire river, and not a part thereof, and the use of a bulkhead to be protected by contractor, the continued existence of which was not necessary to performance of the contract.

2. CONTRACTS ⬅232(1) — CONSTRUCTION — BUILDING OF DAM—EXTRA WORK.

A contract for the construction of a dam, providing that the contractor be compensated for extra work, held not to include extra work caused by contractor's negligence, resulting in destruction by floods of a bulkhead, which was to be utilized in building the dam.

3. CONTRACTS ⬅303(5) — BUILDING CONTRACTS — DAM — CONSTRUCTION OF AGREEMENT AS TO EXTRA WORK—BREACH.

If the extra work caused by contractor's negligence in permitting a flood to destroy a bulkhead, which was to be used in constructing a dam, would be considered extra work, where the specifications of the contract fixed a price for such work at unit prices, the contractor was not justified in failing to complete, because the owner failed to enter into a stipulation to pay for such extra work.

4. CONTRACTS ⬅312(1) — BUILDING CONTRACTS—BREACH—FAILURE TO STIPULATE FOR COMPENSATION FOR EXTRA WORK.

Where a contract for the construction of a dam across a river made provision for stipulations as to payment for extra work, except where based upon the unit system, in which case the regular contract price should govern, held, that it was not intended that the failure of the owner to agree on compensation for extra work would constitute a breach on the owner's part.

5. CONTRACTS ⬅319(2) — BUILDING CONTRACTS — DAM — RECOVERY ON QUANTUM MERUIT.

Contractor, under agreement to construct a dam, which agreement he could not literally perform because of the washing out of a bulkhead, was in no position, where he had refused to complete the dam as far as the bulkhead, to contend that he should recover the value of the work done upon quantum meruit.

6. DAMAGES ⬅120(3)—CONSTRUCTION CONTRACT—BREACH.

The damages for contractor's breach of contract by failing and refusing to complete a dam should be measured by the cost to the owner to complete the same as provided for by the specifications of the contract.

Appeal from District Court, Gonzales County; M. Kennon, Judge.

Suit by the Gonzales Water Power Company against the American Surety Company of New York and another. Judgment for plaintiff, and the named defendant appeals. Judgment affirmed.

Fiset & Shelley, of Austin, and Cooper & Merrill, of Houston, for appellant.

Harwood & Miller, of Gonzales, for appellee.

MOURSUND, J. The Gonzales Water Power Company, a corporation, on December 16, 1916, sued H. C. Gass to recover damages for delay in constructing, and for failure to complete, in accordance with a written contract between plaintiff and Gass and plans and specifications made part thereof, a reinforced concrete dam across the Guadalupe river at Gonzales, Tex., on the site of the old dam belonging to the plaintiff, which had been partly washed away. The contract was signed on August 26, 1914, and on the same day the American Surety Company of New York, as surety, and said Gass, as principal, executed a bond for $5,000, payable to plaintiff, the plans and specifications above referred to being made a part of such bond, for the erection, construction, and completion of a dam in accordance with the contract and specifications. The plaintiff also sued on such bond, and the Surety Company adopted the pleadings of the defendant Gass. The trial resulted in a judgment for plaintiff against Gass for $36,242.28, and against the Surety Company for $5,000 with interest thereon from November 18, 1915, and in favor of the Surety Company against Gass for such sum as it might be compelled to pay on the judgment against Gass. Only the Surety Company appealed.

The findings of fact are lengthy, and cover issues not relied on upon this appeal. We will therefore, for the sake of brevity, copy, or state briefly, those deemed appropriate to an opinion on the issues presented in the assignments. The court found:

"The written contract of August 26, 1914, obligated the defendant to build and complete a reinforced concrete dam, for the plaintiff, across the Guadalupe river, at Gonzales, Tex., on the site of the old dam belonging to the plaintiff, and which dam at its western end

***

was to be joined to a bulkhead of the old dam already in existence and belonging to plaintiff, which old bulkhead was to be slightly raised on account of the greater height of the new dam, and to be completed in four months from the date of the contract, with the proviso that such additional time might be added to said four months as might be equal, in the opinion of the engineer, to the time lost by excessive floods or other conditions not within the control of the defendant, and that time, when mentioned in the agreement, was to be of the essence of the contract.

"The contract also provides that the defendant should so prosecute the work that no damage might accrue to any of the completed work of the plaintiff by or through reason of the defendant's operations, and that the defendant should exercise reasonable engineering ability in keeping with the character of the work to properly take care of the flow of the river, and to avoid damage to the adjacent property, or to the rights of those having rights in the premises.

"So far as it is here necessary to notice the specifications, they provide, among other things, that they cover the material, construction, labor, machinery, apparatus, and appurtenances necessary to erect, construct, and complete the construction of a reinforced concrete dam across the Guadalupe river at Gonzales, Tex., on the site of the old dam owned by the Gonzales Water Power Company at their plant in said city, and the plans and specifications are intended to cover everything necessary to build the dam in a thorough and workmanlike manner, including cofferdam, pumping and excavating machinery of whatsoever nature required by the conditions, and protecting the property during construction; that any omissions in either the plans or specifications covering any of the work essential to the purpose and intent of the plans and specifications should be considered as much thereof as if specifically set forth therein; that there should be no claims allowed for extra cost under the conditions of the specifications, whether on account of the difficulties of high water, accidents, or delay, except that for any time lost on account of floods or delay in the arrival of material, not within the defendant's control, there should be additional time added to the period allowed for completion, and provided that, when any direction for extra work should be made to the contractor in writing, then such work should be executed by the contractor, and price and time for such work should be fixed and agreed upon between the plaintiff and the defendant before the execution, except where unit prices governed possible extra work, and the Surety Company or persons acting on its bond should take notice that any such extra work shall not relieve or limit their liability in the premises; that the bill of material furnished to each bidder with the specifications should not be taken as an estimate of quantities of various material and appliances necessary for the construction and completion of the work comprehended in the specifications, but is furnished merely as convenient data for construction, without entailing upon the plaintiff or engineer any responsibility therefor; that the contractor should be responsible for all the quantities of material and the amount of labor necessary to construct and complete the dam,

leaving the same in perfect condition acceptable to the engineer.

"Under the heading 'Description of Suggested Methods,' it is provided that the piles should be driven until an 1,800-pound hammer falling 8 feet drives a pile less than one-half inch, and that driving should begin on west side of the river. Under the heading 'Time of Completion,' the specifications provide that the work of construction should begin within 10 days after the signing of the contract, should be diligently prosecuted, constructed, completed, and accepted within 4 months after date of contract; that materials required should be accumulated in advance of operation in sufficient quantities and of qualities approved by the engineer to insure the prosecution of the work without break of continuous construction; that the defendant should also provide men and means to accomplish said continuous construction to the satisfaction and approval of the engineer; that in case of any interruption breaking the continuity of the work of construction, or delaying the completion of the same, the plaintiff should have, at its option, the authority, after 7 days' notice in writing to the defendant by the engineer, to enter the premises take possession and charge of all material, machinery, apparatus, and whatever property and appliances owned, rented, used, or controlled by the defendant, and to use said material, machinery, property, and appliances to prosecute the work to its completion and acceptance by the engineer, and to pay all just claims and the cost of construction, and charge the same to the account of the defendant, and pay the remaining part of the contract price to the defendant after such charges are made to the balance due him under the contract. If the cost of construction should exceed the contract price, the balance of such cost should be paid to the plaintiff by the defendant. Other parts of the contract and specifications it is unnecessary to note here, there being no issue raised in regard to their interpretation or application. Indeed, there are really but two controverted points as to the interpretation or application of the contract, and these points will be stated and the facts in regard thereto be found further on in these findings. * * *"

The court further found that shortly after the execution of the contract Gass commenced work on the dam and continued such work intermittently until November 6, 1915, when he discontinued the work until the 13th day of the month, at which time he notified plaintiff that he considered the contractual relations between them at an end; that, Gass having waived the 7 days' notice provided by the contract, the plaintiff took charge of the work, and of the material, apparatus, and machinery on hand, and completed the dam at a cost of $34,702.99, which sum was found to have been the reasonable cost of such completion; that the dam should have been completed on February 14, 1915, and that plaintiff was damaged by delay in the sum of $9,018.75; that plaintiff paid the engineer $4,554.79 after the dam should have been completed, for which Gass was liable; and that Gass was entitled to

a balance of $7,483.70 of the contract price, and to $4,550.55, the value of machinery, etc., which plaintiff failed to return to him after completing the work.

The court also found that on November 6, 1915, plaintiff gave the Surety Company written notice that operations on the dam had been suspended by Gass, and on November 18, 1915, gave said Surety Company notice that the work had been abandoned by Gass, and that plaintiff had taken charge thereof and would complete the same according to the contract, plans, and specifications, at the cost and expense of Gass and the Surety Company; that on November 21, 1916, plaintiff gave to the Surety Company a written statement, showing the sums paid Gass on the contract and the additional cost of completing the dam, and demanding payment of the amount of the bond.

Upon the events leading up to the termination of work by Gass the court found as follows:

"I futher find that during the latter part of September, 1915, a rise in the Guadalupe river at the site of the dam undermined and washed away a part of the west bank of the river, and caused a portion of the old bulkhead and protecting wing walls on said west bank to fall, destroying same, and causing said bank to crumble and slough off and wash away, until the current caused a portion of the bank where the bulkhead and wing wall had stood to be in the river, thereby making it necessary for additional work and material to be used to complete the dam across the river in accordance with the contract; that after the flood the engineer of plaintiff prepared plans for the prosecution of the additional work made necessary by the washout and delivered the same to the defendant, with directions to proceed with the work under the contract. At this point occurred the serious difference between the parties—the defendant contending that the completion of the dam under the contract was made impossible by the flood, and that he was entitled to extra pay for the additional work and material made necessary by such flood; and the plaintiff taking the contrary view, and also contending that the consequences of the flood, making necessary the additional work and material for the completion of the dam, were owing to defendant's negligence. I find that the contract provides for a complete dam across the entire width of the river on the site of the old dam, and that, while the consequences of the flood rendered a literal compliance with the terms of the contract impossible, still the dam could have been completed substantially as agreed upon, and that the defendant by the terms of his contract was bound to so complete it. Further, the damage done by the flood was owing to the negligence of the defendant, and would not have occurred had he prosecuted the work with reasonable diligence, which he did not do, and exercised reasonable engineering ability in prosecuting the work, which he did not do, and had he properly protected the west bank from washing, which it was his duty to do, and which he did not do; that the work made necessary by the consequences of the flood was not extra work within the meaning of the contract, but was merely additional work made necessary thereby, and for which the defendant was not entitled to additional pay, both because such contingency is not provided for in the contract; on the contrary, he is made responsible therefor by the terms of the contract, and because the conditions making such additional work necessary were caused by his own negligence in the respects already mentioned. In this connection, it may be well to substantially recite two paragraphs of the specifications: First, that the contractor should protect all finished work during construction, and any injury to same from any cause shall be repaired or paid for by the contractor; and, second, that there should be no claim allowed for extra costs under the conditions of the specifications and plans, whether on account of difficulty with high water, accidents, or delay, except that for any time lost on account of floods or delay in arrival of material, not within the contractor's control, there should be additional time allowed for completion," etc.

The appellant's main contention is that the plaintiff breached the contract, and not Gass, and that therefore appellant was released from liability on its bond. In this connection it is contended that the contract was not an agreement to construct an entire dam, but only to construct the deck and spillway portion of the dam to be built between and connecting with existing concrete bulkheads and abutments which were a part of the old dam which had previously broken; that therefore the work provided for in the supplemental plan was extra work within the meaning of the contract, and the plaintiff's failure and refusal to agree to compensate Gass for the same constituted a breach of the contract such as authorized Gass to abandon the same, and therefore released the Surety Company from its obligations by virtue of the bond. It is further contended that, even if the contract obligated Gass to construct a completed dam without regard to the continued existence of the old bulkhead, the plaintiff was not entitled under the agreement to the remedy it sought to enforce. Appellant admits that, if an obligation becomes impossible of performance by reason of the obligor's default, he must respond in damages, but contend that this does not mean that the injured party can elect to require something else in place of the contract obligation, and that this was done by plaintiff in preparing the supplemental plans and demanding that the work called for thereby should be performed by Gass.

[1] As is frequently the case, the contract, when viewed in the light of subsequent events, leaves much to be desired in the way of clearness as to what shall constitute extra work. However, it is clear that the parties contemplated that a complete and serviceable dam should be constructed across the river, and not across part thereof, and it was contemplated that the old west bulk-

head could be utilized and embraced in the dam by taking the necessary steps to protect the same and to make it adequate for such use. Plan P shows how it was to be used and some of the things designed to be done for its protection. The specifications show how the height of "the old portion of the west bulkhead" is to be raised and provide for excavations for extensions of bulkheads. It is not reasonable that the parties contemplated that the performance of the contract was dependent upon the continued existence of such bulkhead, or upon the ability of the contractor to protect the same so as to utilize it. If it had been destroyed by the workmen in excavating around it, or seriously damaged, surely it was not intended that this would make the contract impossible of performance. We believe the trial court was correct in his construction of the contract between the parties. In view of the fact that the contract confers upon the engineer the broad powers shown in the court's findings, it appears to us that he was acting clearly within the powers conferred and duties imposed on him when he prepared the supplemental plan and directed that the dam be completed in accordance therewith. It is not contended that what he demanded was unreasonable, or that the result would be to give the plaintiff a more valuable dam than it would have had, if Gass had performed his contract by completing the dam within the stipulated time, in which event he could have utilized the old west bulkhead. It appears to us that, if the court is correct in his construction of the contract with respect to the extent of the contractor's obligation, it follows that the contractor would have to construct the dam on across the river in such a way as to give plaintiff what he contracted for, and that he could not demand extra compensation, nor be heard to say that plaintiff asked too much of him, or demanded something to which he was not entitled by law.

[2–4] As before stated, the contract does not show clearly what is meant by extra work, but it seems evident that work made necessary by Gass' negligent breach of contract, the performance of which is essential to the fulfillment of the obligations assumed by him in the contract, cannot have been intended by the parties to be extra work, and should not be held to be extra work, merely because of its magnitude. Even if the work could be held to be extra work, it does not follow that the acts of plaintiff justified Gass in repudiating the contract. The specifications provide that, when any direction by the engineer for extra work shall be given to the contractor in writing, then such work shall be executed by the contractor; a price and time for such work shall be fixed and agreed upon between the contractor and the owner before its execution,

except where unit prices govern possible work. The contract provides that any direction by the engineer for extra work shall be done by the contractor and paid for by the owner, as hereinafter set forth, without releasing the contractor from any of the conditions of the contract. It appears to us that these provisions must be construed to mean that, except where unit prices govern possible work, or unless the price is fixed in the contract as in case of construction below the average elevation of 74 feet designated on the plans, the contractor is not required to do the extra work unless the price is agreed upon between him and the owner, and he may demand such an agreement before beginning the extra work. It surely was not intended that the failure of the owner to agree on compensation would constitute a breach of the contract on the part of the owner. Nor would the fact that the owner insisted that the completion of the work called for by the supplemental plans was a part of the obligation assumed by the contractor in the original contract constitute a breach of the contract. The fact is that Gass by his failure to do the work in the manner he contracted to do it, was directly responsible for the fact that it became impossible to perform the contract literally by embracing in the dam the old west bulkhead. He could have completed the dam as far as it was possible to do so in the absence of the bulkhead, but he did not see proper to do so. His reluctance was probably caused by the fact that he had taken the contract at an inadequate price. He was to receive $15,000, and he had expended over $30,000 at the time he quit, and had accomplished only 58¾ per cent. of the task undertaken by him.

[5] The correspondence between him and the engineer shows that the engineer was insisting on his compliance with the existing contract, but that Gass was determined to claim a breach of the contract on the part of the owner, because the owner had declined to agree to pay him for the work covered by the supplemental plan, and had contended that it was not extra work, but had offered to submit the matter to arbitration if he would proceed with the construction of the dam. He contended that the owner breached the contract and that he was entitled to sue on a quantum meruit for the value of the work done by him. Even if he had been right in contending that the additional work made necessary by the flood was "extra," within the meaning of the contract, he had no excuse for failing to perform his contract, unless the fact that he could not perform it literally furnished the excuse. He could complete the dam to the place where the old west bulkhead had been located, but could not embrace such bulkhead in the construction work, because it was gone. The

contract became impossible of literal performance, on account of his breach of the contract and negligence. Surely he was in no position to contend that, not only was he not liable for the cost of the additional work required by reason of his wrongful acts, but in addition that he was released from building such part of the dam as he could build, and in fact would be released from the burdens of his contract, and be entitled to recover on a quantum meruit for the work done.

[6] It appears to us that, if the contract be given the narrow construction contended for by appellant, Gass, at the time he quit work, had breached his contract, to the damage of the appellee in a sum vastly in excess of the amount of the bond. He had failed to complete for appellee a dam across the river within the time provided by the contract, and had caused appellee the damages measured by the difference between what such dam would have cost it and the cost of constructing one just as good. Surely the Surety Company would not be released by reason of appellee's demand that the contractor should make good the damages caused by such breach of contract by completing the dam, so as to give it just as good a dam as he had bound himself to construct. Nor can we think of any more accurate way of determining what the damages were than for appellee to use the part of the dam built by Gass and complete it economically, so as to construct a dam only equally as good as the one Gass bound himself to construct. There can be no merit in the contention that it was incumbent on plaintiff, before Gass had abandoned the work, to assume that he would not make good such damages as he became liable for, and to jeopardize its rights under the contract by hauling and dumping material in anticipation of, and to prevent, damage by the flood, which act might have been construed by Gass as an unwarranted interference with his rights. On the other hand, if it be held that he could still substantially complete his contract by doing all the work called for by the original plan, except of embracing in the dam the old west bulkhead, the fact remained that he refused to do so on the pretext that appellee breached the contract by declining to agree to compensate him for extra work, when such a refusal would not constitute a breach of the main contract, but would merely leave the parties in the same attitude as if no request had ever been made. This work was completed by appellee at a cost of about $18,000 in excess of the unpaid part of the contract price, which expenditure was in keeping with what it cost Gass to complete the first 58¾ per cent. of the work, and

the work made necessary by the destruction of the west bulkhead was performed at a cost of $9,400.

We conclude that there is no merit in any of the assignments of error, and that the judgment should be affirmed.

⚖➡For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes