TRAINOR CO. *v.* AETNA CASUALTY & SURETY CO.

No. 13. Argued October 12, 1933.—Decided November 6, 1933.

*Mr. David L. Ullman,* with whom *Mr. Joseph J. Brown* was on the brief, for petitioner.

*Mr. Joseph W. Henderson,* with whom *Mr. Thomas F. Mount* was on the brief, for respondent.

MR. JUSTICE SUTHERLAND delivered the opinion of the Court.

On October 13, 1927, petitioner conveyed to a building company a tract of real estate consisting of fifty-two lots, with the result that the building company became indebted to petitioner in the sum of $28,000, being part of the purchase price. The building company, in order to finance its operations, borrowed sums of money from two different corporations, to one of which it gave a first mortgage upon the real estate, and to the other a second mortgage. The building company then gave to petitioner its note for $28,000, and assigned as collateral security there-

for its equity in the second mortgage. Petitioner accepted this security—in effect a third mortgage—upon the representation and warranty of the building company that a building and certain improvements would be erected, in accordance with plans and specifications, upon each of the fifty-two lots. The performance of this obligation was guaranteed by a bond in the sum of $220,000, executed by respondent, conditioned, among other things, to become void if within ten months from the date thereof, October 13, 1927, each of the fifty-two lots should be fully improved with a building, together with certain other improvements, in keeping with, and as shown by, the plans, specifications, etc.; otherwise to remain in full force and effect. The property is located in Pennsylvania, and the contract and the obligations of the bond were to be performed within that state.

. Suit was brought in a federal district court for the eastern district of Pennsylvania to recover damages for a breach of the bond. A jury was waived; and after a hearing, the trial judge found that on August 13, 1928, the date fixed for the completion of the buildings and improvements, twenty-four of the houses had been completed and twenty-eight had not been fully completed. The value of the lots with the twenty-eight uncompleted houses, as of the date last mentioned, was $6,700 each, an amount slightly in excess of the sum of petitioner's mortgage on each and of all prior liens. Completed, they would, on that date, have been worth $7,950 each. It is not disputed that at the time of the breach of the bond petitioner, under the terms of the mortgages, was powerless to protect itself by foreclosure; and the court found that thereafter the value of real estate, generally and in the locality, had steadily declined. On January 25, 1930, the first mortgage was foreclosed and the property bought in for the sum of $50, thus wiping out the second mortgage and the equity of petitioner therein. Petitioner has

received on account of the indebtedness of $28,000 the sum of $13,026.02 only, leaving $14,973.98 still owing on the principal.

Upon these facts the trial court held that while the *owner* of property, in case of a default after partial performance of a building contract, would be entitled to recover from the surety the difference between the value of the property with the uncompleted buildings and its value with the buildings completed, the rule is otherwise in the case of a *mortgagee-obligee*. Following this view, that court concluded that the measure of damages in the instant case " is so much of the difference between the value of the property as of August 13, 1928, with the houses uncompleted, and the value it would have had on that date had the houses been completed as would have been necessary to pay the plaintiff's mortgage debt as well as all prior liens. Since the value of the property as of August 13, 1928, was more than the sum of the plaintiff's mortgage and prior liens, the plaintiff is not entitled to any substantial damages." The court, therefore, awarded nominal damages only. 49 F. (2d) 769. This judgment the circuit court of appeals affirmed. 62 F. (2d) 487. With that conclusion we are unable to agree.

It is very clear that the settled rule in Pennsylvania is to the contrary. In *Purdy* v. *Massey*, 306 Pa. 288; 159 Atl. 545, where prior cases are reviewed, the court held that where there is an absolute undertaking to erect and complete a building, the surety in case of default is bound to take the place of the principal and erect the building, and the cost of doing that which should have been done is the measure of damages for which the surety is liable, not exceeding the amount of the bond. There the owner of a first purchase-money mortgage had subordinated her security to another mortgage in consideration of the giving of a bond in all substantial respects like the one here under consideration. The building provided for was not

erected, and the mortgagee brought suit against the surety on the bond. The court held that the bond was one of guaranty and awarded as damages the full cost of completion, such cost not exceeding the amount due on the mortgage. The applicable rule is thus stated (p. 295):

"In fixing compensation for damage resulting from breach of a contract the general rule is that the injured party should be placed in the same position as if there had been no breach. The object of the law is to place such party in as good position as if the contract had been kept. In the instant case the bond guaranteed the completion of the building; if there had not been a breach of the obligation of the bond, the building would have been erected. Since this was not done, the plaintiff can only be put in as good position as if the contract had been carried out by giving her the cost of construction, not exceeding, of course, the amount of the bond. The measure of damage on a bond guaranteeing completion is the cost of completion: . . . And in a case such as this, where the work was never begun, this cost will be the whole cost of construction."

See also *Mechanics Trust Co.* v. *Fid. & Cas. Co.,* 304 Pa. 526, 533, *et seq.;* 156 Atl. 146. A like rule obtains in other states. *United Real Estate Co.* v. *McDonald,* 140 Mo. 605, 612; 41 S.W. 913; *Kidd* v. *McCormick,* 83 N.Y. 391. Compare *Wicker* v. *Hoppock,* 6 Wall. 94, 99.

The circuit court of appeals held that the Pennsylvania decisions merely declared the common law of that state with regard to suretyship, and, since that law is derived from the principles of general jurisprudence common to all the states, a federal court in determining what it is might exercise an independent judgment. We do not deem it necessary to discuss the principle enunciated or to decide whether the Pennsylvania decisions come within it. It is enough to say that even where the principle applies, "for the sake of harmony and to avoid confusion, the Federal

courts will lean towards an agreement of views with the State courts if the question seems to them balanced with doubt." *Burgess* v. *Seligman,* 107 U.S. 20, 33–34. And see *Sim* v. *Edenborn,* 242 U.S. 131, 135, where the authorities are collected; *Community Bldg. Co.* v. *Maryland Casualty Co.,* 8 F. (2d) 678, 680. In the present case it would not be going far enough to say merely that the question is " balanced with doubt," for it seems to us that the Pennsylvania decisions, and those of the other states cited above, are plainly right. Compare *Messenger* v. *Anderson,* 225 U.S. 436, 444.

The petitioner here, not being willing to accept a third mortgage on the unimproved land to secure its debt, required the added security which would be afforded by completed improvements. These improvements the building company agreed to make within a definitely fixed time, and for the performance of that undertaking respondent, for a valuable consideration, stood sponsor. Plainly the obligation of the bond was one of guaranty and not indemnity, and could be fulfilled only by the erection of the buildings or payment of the penalty in case of default. It is no answer to say that the value of the property immediately after the default exceeded the sum of the mortgage together with all prior liens. Petitioner was then without remedy against the property because its mortgage was not in default. It was, therefore, obliged to sit by and await the action of others over which it had no control. In the meantime, the uncompleted buildings necessarily lay unrented, subject to expense in the way of taxes, insurance, accumulating interest, etc., deteriorating in quality and steadily declining in value. Petitioner is entitled to be put in as good position in respect of its debt as it would have occupied if the buildings had been completed in accordance with the terms of the undertaking; and this can be done here only by giving it the amount of the difference between the

value of the unfinished buildings and their value as it would have been if completed in accordance with the agreement—see *Kidd* v. *McCormick, supra,* p. 398—but exceeding neither the amount due on its debt nor the amount of the bond.

It appears from the findings that this difference would be about $26,000, while the amount now due petitioner is $14,973.98, together with interest thereon from August 13, 1928. It follows that the judgments of the courts below must be reversed and the cause remanded to the district court with directions to enter judgment for the last named sum.

*Reversed.*