## CITY OF READING v. UNITED STATES FIDELITY & GUARANTY CO.
### No. 19274.

District Court, E. D. Pennsylvania.
May 13, 1937.

Robert T. McCracken, of Philadelphia, Pa., for plaintiff.

Hirschwald, Goff & Rubin, of Philadelphia, Pa., for defendant.

MARIS, District Judge.

This is an action in assumpsit brought by the City of Reading against the United States Fidelity & Guaranty Company. The facts averred in the statement of claim may be summarized as follows:

On April 5, 1934, the City of Reading entered into a contract with Walter S. Rae for the construction of a water supply tunnel. On the same day Rae and defendant, United States Fidelity & Guaranty Company, executed and delivered to the city their bond in the sum of $179,252.60 conditioned that Rae should "well and truly perform the work under the contract pertaining to the construction of a water supply tunnel, as aforesaid." Rae commenced work on April 24, 1934, and on August 28, 1934, he stopped work and notified the city that he was terminating the contract. Thereafter he did no further work on the tunnel. At the time the city had fully performed all its obligations under the contract and was not in default. Rae had then done but a small part of the work, its value being only $2,500. On August 31st the city notified Rae and the defendant in writing to fulfill the conditions of the contract, that it refused to accept Rae's abandonment and would hold both Rae and defendant to strict accountability for the performance of the contract. On September 7th defendant notified the city that it did not elect to assume completion of the contract. On September 11th the city notified defendant that it intended to complete the work and to hold Rae and defendant liable therefor and on October 24th a contract for the completion of the work was awarded to Joseph Lombardi with whom the city entered into a contract on October 26th. This contract was identical in its terms, plans, and specifications with the contract with Rae with the exception of dates and unit prices bid. Lombardi commenced work on November 7, 1934, and was expected to substantially complete it by April 1, 1936. His contract, however, called for completion on or before July 1, 1935. Neither the contract with Rae nor that with Lombardi called for a lump-sum price for the job, but each of them provided for unit prices for various parts of the work. Based on these unit prices as applied to the quantity of work required to be done and after deduction for certain work not required to be done, the total contract price in the case of the contract with Rae was $171,098.05 and in the case of the later contract with Lombardi $227,148.20

The city claims as damages in this suit upon the bond given by the defendant and Rae the sum of $56,050.15, being the difference between the price required to be paid to Lombardi under his contract and the total price under Rae's contract. In addition, the city claims the sum of $19,850 as damages for delay from March 1, 1935, the date stipulated for completion in Rae's contract, to April 1, 1936, the date of actual completion. This sum is apparently computed upon the basis of a penalty of $50 per day for delay as stipulated for in Rae's contract.

To the statement of claim setting forth these facts, defendant has filed an affidavit of defense raising questions of law. The questions raised may be compressed into

two. The first is that the plaintiff's measure of damages as averred in the statement is improper. The other is that the plaintiff is not entitled to any damages for delay. Passing without deciding the question whether these propositions are such as may properly be raised in an affidavit of defense raising questions of law, we·will consider each on its merits.

■ The first proposition raised by the defendant is that since Rae's contract itself provideś in paragraph˙ C54 for a specific method of measuring the damages in the event of the abandonment of the contract by the contractor, that ˙method must be followed. The provision is that the city may complete the work and charge the expense thereof to the˛contractor or his surety. On the basis of this provision defendant urges that it is incumbent upon the city to complete the contract and definitely to ascertain the expense of completion before bringing suit. Since the present suit is upon the bond and not the contract, this contention is evidently based upon the theory that the former is a bond of indemnity against loss by reason of the nonperformance·of the construction contract. If this were so, the defendant's position might be well taken. It is clear, however, that the bond upon which the present suit has been brought is one of guarantee and not merely one of indemnity against loss. Board of Education v. Maryland Casualty Co. (C.C.A.) 27 F.(2d) ˙20; Purdy v. Massey, 306 Pa. 288, 159 A. 545; Trainor Co. v. Ætna Casualty Co., 290 U.S. 47, 54 S.Ct. 1, 78 L.Ed. 162. As in the cases cited, so here the condition of the bond was performance of the contract and upon default by the contractor the surety was bound to complete the work. Having defaulted in this obligation its liability at once became fixed to compensate the city for the damages sustained by the latter. In these circumstances, if there is no contractual obligation on the owner to complete the work, damages are payable even though it is never completed. Wills v. Peace Creek Drainage District (C.C.A.) 4 F.(2d) 519. In such a case, damages must necessarily be based upon evidence as to what the completion of the work would reasonably cost. But where as here a contract to complete the work has been let on terms identical with those of the first contract except as to price, the measure of damages clearly is the difference between the original contract cost of the uncompleted work and the cost fixed in the later contract. Board of Education v. Maryland Casualty Co., supra. It follows that the measure of damages claimed by the city is proper, the defendant being entitled to credit for so much of the work included in Lombardi's contract as was actually performed by Rae. The conclusion we have reached is not affected by the fact that the contracts here involved contained unit instead of lump-sum prices. The units being ascertainable, the prices were readily reducible to a lump-sum basis, as the statement of claim discloses.

■ The remaining question is whether the city is entitled to additional damages for delay. It has apparently claimed them upon the basis of the penalty of $50 per day for delay contained in Rae's contract. We may admit that a stipulation of this kind may˙ not be applied in respect of the full period of delayed construction, since some of ˙the delay may well be due to acts of the owner or defaults of the second contractor and for these the˛defaulting contractor should not be held responsible. Shields v. Shields Construction Co., 81 N.J. Eq. 286, 86 A. 958. It does not follow, however, that the city is not entitled to any damages for delay. It has been held that such damages are recoverable. Prudence Co. v. Fidelity Co., 297 U.S. 198, 56 S.Ct. 387, 80 L.Ed. 581. The penalty stipulated for in the contract appears to be a reasonable liquidation by the parties of the damages suffered by the city for delay in completing the contract (Malone v. Philadelphia, 147 Pa. 416, 23 A. 628), and we think that the˙city is entitled to claim damages at that rate for such delay as directly resulted from Rae's abandonment of the work. Just what portion of the delay was directly attributable to Rae's abandonment of the contract is, of course, a question of fact to be determined at the trial, but since the city secured a second contractor and surety who guaranteed to complete the work by July 1, 1935, four months after the completion date˛stipulated in Rae's contract, it would appear that defendant could not be held responsible for delay beyond that period. It would thus seem that the city's claim for damages for delay could not exceed $6,100.

The questions of law raised by the defendant are decided against it with leave to file a supplemental affidavit of defense within fifteen days.