**NEW AMSTERDAM CASUALTY CO. et al.,**
**Appellants,**

v.

**T. J. BETTES et al., Appellees.**

**No. 16709.**

Court of Civil Appeals of Texas.

Dallas.

June 3, 1966.

Rehearing Denied Oct. 28, 1966.

---

Brundidge, Fountain, Elliott & Churchill, Lloyd E. Elliott, and J. Willard Gragg, Dallas, for appellants.

Vinson, Elkins, Weems & Searls, John C. Snodgrass and John B. Holstead, Houston, Dean Carlton, Dallas, for appellees.

CLAUDE WILLIAMS, Justice.

This is an appeal from a judgment for $1,178,770 in favor of T. J. Bettes Company against New Amsterdam Casualty Company. The recovery of T. J. Bettes Company was upon alleged obligation of four bonds executed by L. A. Peterson, Inc., as principal, and New Amsterdam Casualty Company as surety, said bonds being conditional upon the faithful performance by L. A. Peterson, Inc., of contracts for the construction of buildings located in Virginia and New York.

The factual background of the parties and subject matter involved in this litigation is so complex that the record will not yield to a simple statement.

## BACKGROUND OF PARTIES

L. A. Peterson, Inc. (hereinafter called Contractor or Peterson, Inc.) is a Texas corporation engaged in the construction business. All of the stock of this corporation was owned by L. A. Peterson with the exception of two shares, one owned by his wife and one by his brother. Its directors were R. C. Peterson, James R. Cash, B. W. Morris, Frank Zitzman and L. A. Peterson.

South Falls Corporation was incorporated under the laws of the State of Texas.

James R. Cash, Billy W. Morris and L. A. Peterson each owned one-third of the stock of this corporation. Later, the stock of the company owned by L. A. Peterson was transferred to L. A. Peterson, Inc.

Disco Corporation was a wholly owned subsidiary of South Falls Corporation. Morris, Peterson and Cash were officers and directors of this corporation. Both corporations were engaged in acquiring land and constructing buildings thereon in various parts of the United States. The corporations will be referred to as South Falls and Disco, respectively, and collectively as South Falls-Disco.

Because of the interrelationship between Peterson, Inc. and South Falls-Disco, Peterson, Inc., was the contractor on the majority of the building projects constructed by South Falls-Disco in Iowa, Illinois, Ohio, Texas, Virginia and New York.

T. J. Bettes Company (hereinafter called Bettes) is a Texas corporation engaged in the mortgage banking business, one facet of which is the making of interim construction loans. Bettes was the interim construction lender on the building projects mentioned above in Ohio, Illinois, Iowa, Texas, Virginia and New York. On each of the projects Bettes required that Peterson, Inc. and an approved corporate surety execute dual obligee bonds, being identical with those bonds involved in the present litigation and which will be described in more detail hereinafter.

## THE VIRGINIA AND NEW YORK CONSTRUCTION CONTRACTS

Peterson, Inc. engaged to build buildings for Disco in Norfolk, Newport News and Richmond, Virginia and in Plattsburgh, New York. On each of these jobs Bettes required that South Falls-Disco, L. A. Peterson, Inc. and L. A. Peterson, James R. Cash and B. W. Morris, individually, execute a loan agreement which spelled out in detail the conditions under which Bettes' loan was being made with reference to interim financing of the respective jobs.

These loan agreements provided, *inter alia,* that on each construction project South Falls-Disco should furnish Bettes as security the following instruments: (1) note and deed of trust; (2) collateral assignment of an unconditional contract to purchase the buildings previously executed by A. A. Rosen, a New York investor; and (3) collateral assignment of landlord's interest under a twenty-year lease previously executed by Maxam's Inc., a large discount department store chain. Also, Peterson, Inc. was required to furnish the owner, South Falls-Disco, and the lender, Bettes, dual obligee payment and performance bonds executed by an acceptable corporate surety.

On January 19, 1962 Disco, as owner, and L. A. Peterson, Inc., as contractor, executed three standard form agreements for the construction of "Maxam's Department Stores" in Norfolk, Newport News and Richmond, Virginia for an agreed consideration of $861,802 each. The completion date in each contract was May 26, 1962. In each of the contracts Peterson, Inc. agreed to furnish all of the materials and to perform all of the work shown on the drawings and described in the specifications for each of the respective jobs and to do everything required to be done by the contract. Article 7 of the contract entitled "Guaranty Bonds" provided:

"Contractor shall furnish to owner and to T. J. Bettes Company, as construction loan lender, performance and payment bonds, in which owner and such lender shall be obligees (commonly referred to as dual obligee bonds) as their respective interests may appear. Such bonds shall be executed by a corporate surety satisfactory to both owner and lender. Owner agrees that the interest of the lender in such bonds shall be the amount of construction money which it shall have advanced, together with interest on each such advance from the time of the advance at the rate of 6 per cent per annum, which interest and claim of such lender on each such bond shall be prior and superior to any interest and claim of owner."

On June 5, 1962 South Falls, as owner, and L. A. Peterson, Inc., as contractor executed a construction contract for the construction of "Forest Hills Outlet Store, Plattsburgh, New York", such contract having the same general provisions as the Virginia contracts except that the amount was to be $750,000.

Subsequent to the execution of each of the construction contracts Peterson, Inc. as principal and New Amsterdam, as surety, executed two bonds, a payment bond and a performance bond, on each of the four construction projects in question.

## THE PERFORMANCE BONDS

The four performance bonds, which are of vital concern in this litigation, were all on standard A. I. A. forms and the one on the Norfolk, Virginia project is illustrative of all:

"KNOW ALL MEN BY THESE PRESENTS:

That L. A. Peterson, Inc., 7135 Empire Freeway, Dallas, Texas as Principal, hereinafter called Contractor, and NEW AMSTERDAM CASUALTY COMPANY, a corporation organized and existing under the laws of the State of New York, as Surety, hereinafter called Surety, are held and firmly bound unto Disco Corporation, 1066 W. Mockingbird Lane, Dallas, Texas and T. J. Bettes Co., Houston, Texas as Obligee, hereinafter called Owner, in the amount of Eight Hundred and sixty-one thousand, eight hundred two dollars and no/100 Dollars ($861,802.00), for the payment whereof Contractor and Surety bind themselves, their heirs, executors, administrators, successors and assigns, jointly and severally, firmly by these presents.

"WHEREAS, Contractor has by written agreement dated January 19, 1962 entered into a contract with Owner for

general construction of Maxam's Department Store, Norfolk, Virginia in accordance with drawings and specifications prepared by Donald H. Speck, which contract is by reference made a part hereof and is hereinafter referred to as the Contract.

"NOW, THEREFORE, THE CONDITION OF THIS OBLIGATION is such that, if Contractor shall promptly and faithfully perform said Contract, then this obligation shall be null and void; otherwise it shall remain in full force and effect.

"The Surety hereby waives notice of any alteration or extension of time made by the Owner.

"Whenever Contractor shall be, and declared by Owner to be in default under the Contract, the Owner having performed Owner's obligations thereunder, the Surety may promptly remedy the default, or shall promptly

(1) Complete the Contract in accordance with its terms and conditions, or

(2) Obtain a bid or bids for submission to Owner for completing the Contract in accordance with its terms and conditions, and upon determination by Owner and Surety of the lowest responsible bidder, arrange for a contract between such bidder and Owner and make available as work progresses (even though there should be a default or a succession of defaults under the contract or contracts of completion arranged under this paragraph) sufficient funds to pay the cost of completion less the balance of the contract price; but not exceeding, including other costs and damages for which the Surety may be liable hereunder, the amount set forth in the first paragraph hereof. The term "balance of the contract price," as used in this paragraph, shall mean the total amount payable by Owner to Contractor under the Contract and any amendments thereto, less the amount properly paid by Owner to Contractor."

Each bond contained an endorsement which reads as follows:

"The Surety shall not be liable under this bond to the obligees, or either of them unless the said obligees, or either of them, shall make payments to the principal, strictly in accordance with the terms of said contract as to payments and shall perform all the other obligations to be performed under said contract at the time and in the manner therein set forth. This agreement is hereby attached to and becomes a part of the bond."

The four labor and material payment bonds covering each of the four construction projects contained basically the same information as the four performance bonds.

### ALLEGED DEFAULT IN CONTRACTS BY PETERSON, INC.

After the work on the Virginia construction contracts had been carried off almost to completion Peterson, Inc., was called upon to correct the defects and deficiencies claimed by the owners. The requested corrections were not made. Bettes claimed that in order to procure the acceptance of the Virginia buildings by the tenant, it was required to place in escrow the sum of $80,570 for repairs and completion of the buildings. It was claimed that New Amsterdam refused to perform its obligation under the bond.

It was also claimed that in November 1962 L. A. Peterson, Inc., abandoned the work on the Plattsburgh project at a time when it was only 25 to 30 per cent complete. It was alleged that after such abandonment it was discovered that the value of the work completed was only about $188,000, and that South Falls would be required to expend the further sum of $561,700 to complete the project. It was alleged that New

Amsterdam refused to perform its obligation as surety on this breach.

Bettes' cause of action against New Amsterdam and Peterson, Inc., was to recover not only actual damages which it claimed to have incurred in the completion of the projects but also special damages in the nature of diminution of value of the property caused by delay in completion of the construction contract.

## FINDINGS OF FACT AND JUDGMENT ON THE VIRGINIA BONDS

The case was tried to the court without a jury and the trial judge filed Findings of Fact and Conclusions of Law. Among other things the court found that as to the Virginia bonds the principal, Peterson, Inc., and the surety, New Amsterdam, were liable not only for the $80,570 required to complete the construction of the projects but also the sum of $460,000 representing the diminution in value of the buildings and the lender's security by virtue of the loss of the twenty-year lease and also the loss of the Rosen agreement to purchase the property. In this connection the trial court found that Maxam's lease and the Rosen contract to purchase were terminable unless the buildings were completed on time; that the Virginia buildings were not completed on time; that liens totaling $557,-235.34 were filed against the Virginia projects; that because of the filing of the liens and the failure of L. A. Peterson, Inc., to complete the construction on time, the time expired on the Maxam's lease and the Rosen agreement to purchase. The court further found that Bettes, in mitigation of its damages, was compelled to enter into negotiations with Rosen and Maxam's to salvage what it could from those transactions. The court found that the Maxam's twenty-year lease was lost, that as a result of the renegotiation of the Rosen contracts to purchase Rosen agreed to purchase the Virginia buildings only upon condition that permanent financing be procured for him, and that the only lease Bettes could procure in place of the Maxam lease was a two-year lease at a reduced rental by another discount chain. The court found that because of the loss of the Maxam lease the Bettes Company's security was impaired and diminished to the extent of 20 per cent of the value of the property, or $460,000, which the court found was additional damages to be assessed against the principal and surety on the performance bond. The judgment, as relates to the Virginia contracts, was against Peterson, Inc. and New Amsterdam for (a) $80,570, representing actual cost of completion of the construction of the Virginia projects; and (b) $460,000, being the diminution in value of the buildings and the lender's security by virtue of the loss of the twenty-year lease and the agreement to purchase.

## OPINION

## VIRGINIA BONDS

As to that portion of the judgment relating to the Virginia projects appellant does not challenge the award of $80,570, representing the cost of completion of the job, but vigorously attacks, by six points of error, that portion of the judgment wherein the amount of $460,000 is awarded for diminution of value of the security of Bettes. Thus we are confronted with the principal issue as to whether the trial court was correct in holding that $460,000 alleged diminution in the lender's security was a proper measure of damages and recoverable under the Virginia bonds.

Appellee Bettes places great reliance upon that part of the bond which provides that whenever the contractor shall be in default under the contract the surety may do one of two things: (1) complete the contracts in accordance with its terms and conditions, or (2) obtain a bid or bids for submission to owner for completing the contract in accordance with its terms and conditions and arrange for a contract between such bidder and owner and make available as work progresses sufficient funds to pay the cost of completion less

the balance of the contract price; but not exceeding, *including other costs and damages for which the surety may be liable hereunder,* the amount set forth in the first paragraph of the bond. This provision, says Bettes, is broad and comprehensive and contemplates *any* and *all costs* and *damages* less than the amount of the bond principal. It relies upon cases such as Prudence Co., Inc. v. Fidelity & Deposit Co. of Maryland, 2 Cir., 77 F.2d 834, modified and affirmed 297 U.S. 198, 56 S.Ct. 387, 80 L.Ed. 581; Kidd v. McCormick, 83 N.Y. 391; Trainor Co. v. Aetna Casualty & Surety Co., 290 U.S. 47, 54 S.Ct. 1, 78 L.Ed. 162, 165, and Purdy v. Massey, 306 Pa. 288, 159 A. 545, as holding that special damages in the nature of depreciation in value of property is recoverable against a surety under an undertaking of the character presented by this appeal.

Appellant supports its position that the diminution, if any, of the security held by Bettes is not a proper measure of damages in an action upon a bond of the character here presented, by pointing to the express provisions of the bond itself which, it contends, may not be enlarged upon by implication or otherwise. Appellant further contends that the cases relied upon by appellee, while containing some broad and general language, do not, upon close analysis, actually hold that special damages of the character here claimed are within the contemplation of the law nor the parties as proper damages against a surety on a completion bond.

Having carefully examined this record in the light of the contentions here advanced we agree with appellant that the trial court applied an erroneous measure of damages in allowing the item of $460,000.

We are here dealing with the obligation of a surety, appellant New Amsterdam, upon a written bond obligation, the condition of which is specific in its terms:

"NOW, THEREFORE, THE CONDITION OF THIS OBLIGATION is such that, if Contractor shall promptly and faithfully perform said Contract, then this obligation shall be null and void; otherwise it shall remain in full force and effect."

■ Thereafter follow the provisions relative to the rights of the surety in the event of default by the contractor. The bond also contains the endorsement to the effect that the surety shall not be liable to either of the obligees unless all contract obligations are performed by the obligees. The effect of the "dual obligee bonds" is that the owner agrees that the interest of the lender shall be the amount of the construction money which it shall have advanced and that claims of the lender on each bond shall be prior and superior to that of the owner. Thus it is apparent that the liability of the surety under the bond is in no sense increased because Bettes is also an obligee. The interest of Bettes is only by way of priority to any damages for which the surety would be liable if Bettes were not an obligee.

■ We cannot agree with Bettes that the words "including other costs and damages for which the Surety may be liable hereunder," which are found in the bond and relating to one of the means by which the surety may take care of the work not performed by the contractor, authorize an enlargement of the surety's obligation. These words are nothing more than a limitation upon the amount which the surety will have to make available as work progresses in the event of default, and is not a condition upon the surety to pay or become obligated for anything further.

■ While there are some vague references in appellee's brief concerning ambiguity we find nothing in the bond which would justify such a contention. The bond is clear and explicit in its terms and provisions and we must construe the same in the light of well established rules announced by the authorities.

■ The rule that the obligation of a surety must find a basis in the bond itself

and cannot be supplied by implication results from the favorable position of a surety under Texas law as stated in 53 Tex.Jur.2d 591, § 26:

"The liability of a surety is strictissimi juris; it cannot be extended by implication, construction, or presumption beyond the terms of his contract nor to persons who are not parties thereto. The surety may stand on the letter of his contract, his obligation does not extend beyond what is agreed to in the bond, and he is not liable for the default of his principal to perform any duty or obligation not fairly within the undertaking." [1]

The same rule is applicable to both uncompensated sureties and corporate sureties who enter into contracts or suretyship for profit. Hess & Skinner Engineering Co. v. Turney, 110 Tex. 148, 216 S.W. 621, 622.

▮ We find nothing in the bond obligation which would extend the obligation of the surety beyond the general recital that the bond shall be void "if the Contractor shall promptly and faithfully perform said Contract." Indeed, the limit of liability is specifically set forth by the provisions of the bond that if the contract is declared by the owner to be in default the surety may remedy the default in one of two ways. There is an overall limitation to the penalty of the bond by the provision that the amount to be advanced for completion, plus other costs and damages for which the surety may be liable hereunder, shall not exceed the total amount of the bond.

▮ Ordinarily the normal measure of damages for failure on the part of the surety to comply with the bond provisions is the amount it would cost over and above the contract price to remedy the defects or to complete the structure. Graves v. Allert & Fuess, 104 Tex. 614, 142 S.W. 869, 39 L.R.A.,N.S. 591; American Surety Co. v. Lyons, 44 Tex.Civ.App. 150, 97 S.W. 1080; American Surety Co. v. Gonzales

Water Power Co., Tex.Civ.App., 211 S.W. 251 (error refused); Birmingham v. Lindemann, Tex.Civ.App., 236 S.W.2d 843; Annotations, 76 A.L.R.2d 805.

▮ As for the possible recovery by an obligee of special damages over and above the actual cost of completion of the buildings, the general rule is set forth in 103 A.L.R. 1396, 1397, as follows:

"The general rule is now well established that a mortgagee-obligee, having had no satisfaction of his debt, in a situation where the same represents purchase money as well as advances for proposed improvements, who, in order adequately to strengthen his security, has required a surety bond for performance according to agreement of all things relating to such improvements, may recover to the extent to which he has suffered by nonconformity with the agreement, such being considered the difference between the value of the property with the unfinished improvements and the value thereof as it would have been with the improvements completed. The actual cost of completion is consequently and invariably the main guide in determining the chief element of the damage, although it may not always be conclusive."

In Prudence Co. v. Fidelity & Deposit Co., 297 U.S. 198, 56 S.Ct. 387, 80 L.Ed. 581, the Supreme Court of the United States was dealing with a case in which the lower court had allowed only cost of completion as a measure of damages in a suit against the surety on a completion bond. The Supreme Court held that in such a case the measure of damages was:

1. Cost of doing the unfinished work;

2. Loss resulting from omissions and substitutions; i. e., amount necessary to correct defective work;

3. Damages for delay, which is a reasonable rental value during the period

---

1. See Southwest Savings Ass'n v. Dunagan, Tex.Civ.App., 392 S.W.2d 761, in which we applied the same rule in construction of guaranty agreements.

of idleness, or carrying charges "not to exceed the rental value, during the period of idleness."

This decision, heavily relied upon by appellee, does no more than hold that there may be added to the actual cost of completion something for delay, not exceeding rental value for the period of idleness.

In Trainor Co. v. Aetna Casualty & Surety Co., 290 U.S. 47, 54 S.Ct. 1, 78 L.Ed. 162, a mortgagee of land with buildings and improvements to be erected thereon, in order adequately to secure its debt, took a surety bond guaranteeing faithful performance of the building contract. The Supreme Court, speaking through Mr. Justice Sutherland, in establishing the correct measure of damages, said:

"Petitioner is entitled to be put in as good position in respect of its debt as it would have occupied if the buildings had been completed in accordance with the terms of the undertaking; and this can be done here only by giving it the amount of the difference between the value of the unfinished buildings and their value as it would have been if completed in accordance with the agreement * * * but exceeding neither the amount due on its debt nor the amount of the bond."

In Kidd v. McCormick, 83 N.Y. 391 the court held that the plaintiff was entitled to "as much as will put him in as good plight as he would have been had the houses been finished", and that his damages "are the difference in the value of the premises, as they were with the houses unfinished, [on the date of abandonment of the work] from what the value of them would have been, had the houses been finished on that day according to the contract."

In both Mechanics' Trust Co. v. Fidelity & Casualty Co., 304 Pa. 526, 156 A. 146 and Purdy v. Massey, 306 Pa. 288, 159 A. 545, the court held that upon a breach of the obligation to complete a building the bond surety would be liable for the cost of completion only.

■ In this case Bettes contends that it is entitled to the diminution in value of its security by virtue of the failure to complete the construction of the buildings and that the elements which make up such diminution are such as damages predicated upon increased demands made by one under contract to purchase, which in turn resulted in Bettes agreeing to repurchase a permanent loan, which it had to repurchase because the tenant Maxam's subsequently became bankrupt. The authorities relied upon by Bettes do not in any manner go as far as to allow such special or consequential damages as here contended by Bettes. We therefore sustain appellant's first point of error, and hold that the diminution in lander's security to the extent of $460,000 was not a proper measure of damages and recoverable under the Virginia bonds.

■ Special or consequential damages are such damages which a party may recover on the breach of a contract which are incidental to and caused by the breach, and may reasonably be supposed to have entered into the contemplation of the parties at the time of the contract. Humble Oil & Refining Co. v. Wood, Tex.Com.App., 292 S.W. 200; Jones v. George, 61 Tex. 345, 355.

■ The trial court found that New Amsterdam was well aware of the possibility of the loss which might be occasioned by Bettes when it executed the bonds in question and that such loss was within the contemplation of both of the parties. Appellant attacks this finding as being without supporting evidence or contrary to the overwhelming weight and preponderance of the evidence. We have carefully examined the record in this connection and we agree with appellant that it has not been demonstrated by evidence of probative value that New Amsterdam knew, or could have reasonably known, of the complicated financial arrangements between

Bettes and South Falls-Disco as well as the arrangements concerning the purchase agreement and lease agreement involved in the Virginia projects. In the event there is any evidence the same is wholly insufficient, in our opinion, to justify the trial court's finding that the consequences of the loss in question were within the contemplation of the parties at the time the bond was executed. Accordingly, we sustain appellant's points two and three.

From what we have said it is unnecessary for us to pass upon appellant's points four, five and six.

## PLATTSBURGH PROJECT

On the Plattsburgh contract the judgment against appellant was for $638,200, consisting of the following elements:

(a) $119,700 being the amount required to complete the construction of the building;

(b) $346,500 representing the loss of rentals provided for under Maxam's lease on this building from completion date provided in the contract to the date of the trial; and

(c) $172,000 alleged liens on the property.

Appellant attacks this portion of the judgment in fifteen points of error, briefed under three main topics. By its points seven, eight and nine appellant contends that the trial court erred in holding that the surety was not released by an overpayment to contractor of in excess of $100,000 on the Plattsburgh project; that Bettes should not be allowed to recover on the bond because of the breach of contract by South Falls; and that when the overpayment to contractor is restored to the contract balance no excess of completion costs results and hence the trial court should not have allowed the recovery of $119,700.

The contract for the Plattsburgh project is dated June 5, 1962 and requires completion within 150 days after receipt of approved plans and specifications. The contract price is $750,000 payable 90 per cent on the first day of each month based on the contract prices for labor and material incorporated in the work as estimated by the architect. The record reveals that the contractor proceeded with the work and partially completed the same. As of October 29, 1962 the total amount of work done on the contract was $342,600, which with 10 per cent retainage, made a total of $308,340 paid the contractor for work to that date. However, the record is also undisputed that from time to time L. A. Peterson, Inc. filed "certificates for payment" with South Falls, said certificates being verified by L. A. Peterson. As South Falls received the various "certificates for payment" from L. A. Peterson, Inc., they were forwarded to Bettes Company which advanced the requested money to South Falls based upon such certificates. The record reveals that the contractor did not complete the Plattsburgh project and that after it abandoned all work it was discovered that the sworn "certificates for payment" were false and that certain funds from the project had been diverted by L. A. Peterson to pay bills on other projects. As a result of these false "certificates for payment" contractor had received payments on the Plattsburgh project totaling $308,340, and the actual value of the work completed on such project was only $188,000, representing an overpayment of $120,304. Based upon evidence relating to the amount that Bettes would be required to expend to complete the project in accordance with the original plans and specifications the trial court awarded Bettes $119,700 damages for the excess cost of completion brought about by overpayment as above set forth.

Appellant contends that the admitted breach of the contract by the contractor resulted in a release of the surety from its obligation to South Falls. This for the simple reason that to allow recovery of this amount of admitted overpayment is to permit the owners to recover for their own breach of contract. Aetna Casualty

& Surety Co. v. Russell, Tex.Com.App., 24 S.W.2d 385; Old Colony Ins. Co. v. City of Quitman, 163 Tex. 144, 352 S.W.2d 452; and 10 Tex.Jur.2d 87, § 71. Such position of appellant presupposes and assumes knowledge and acquiescence as to South Falls concerning the false "certificates for payment" executed by Peterson to obtain the overpayment. Based upon the evidence presented the trial court impliedly found that the officials of South Falls did not know of the falsity of the certificates. However, we do not deem this fact to be of great importance or of controlling value to the question here presented. The issue here is whether Bettes may recover this item of damages.

■ There is no evidence in this record that any official of Bettes knew of the falsity of the affidavits made the basis of the overpayment in question. New Amsterdam admits that Bettes advanced the funds on the "certificates for payment" without notice that the certificates were false and that excess payments were being made. However, New Amsterdam takes the position that the rights of Bettes under the Plattsburgh dual obligee bonds must stand or fall with the rights of South Falls, and that if South Falls knew of the falsity of the certificates filed by Peterson, Inc. then Bettes, an innocent party, cannot recover under the bond. We cannot agree with appellant's contention in this regard. Assuming, *arguendo*, that South Falls knew of the falsity of the affidavits yet we cannot find any basis for charging Bettes with this knowledge. The position of Bettes as a co-obligee on the bond is defined by the well expressed terms of the bond itself, copied above.

The Commission of Appeals in Williams v. Baldwin, Tex.Com.App., 228 S.W. 554, opinion adopted by the Supreme Court, involved a similar situation. Baldwin, as owner, sued Davis Construction Company and the sureties on its performance bond to recover the cost of completion of a building which was in excess of the contract price. Baldwin also sued materialmen and laborers who were unpaid and had attached liens on his property, and they also sought to recover under the performance bond. The sureties contended that they were discharged on the ground that there had been a violation of the terms of the bond by the principal without their consent. The Commission of Appeals held that as to Baldwin the sureties were discharged but as to the materialmen and laborers, the other obligees under the bond, the sureties were not discharged. The court said:

"The rule is that, where the bond names the materialmen and laborers as obligees and is conditioned for the payment of claims for labor performed and material furnished, the sureties are not discharged from liability to persons furnishing labor and material by reason of the owner having made payments in violation of the bond unless they knew of such violation at the time of furnishing the material and performing the labor." (Citing authorities.)

We think that Bettes stands in a similar position to the materialmen in the Baldwin case, supra, and its rights should be unaffected by any act or knowledge of South Falls, even assuming such knowledge (and we do not do so).

Appellant's points seven, eight and nine are overruled.

■ By its points ten and eleven appellant complains of the portion of the judgment awarding appellee $346,500 representing the loss of rentals on the Plattsburgh building from completion date provided in the construction contract to the date of trial, it being contended that such amount is not a proper measure of damages under the record in this case. We agree with appellant that the trial court's award in this regard is not supported by the record.

The record is extensive in detailed facts concerning what transpired after the contractor failed to proceed with the completion of the unfinished building at Plattsburgh. In November 1962 the contractor

abandoned the project and the building was far from being completed. The roof was not on nor the flooring in and it was open to the elements. Many negotiations transpired between the parties, including re-negotiation of the lease contract with Maxam's with a rental of $120,000 per year. At the time of the trial the building was not yet completed and no tenant occupied the building. Bettes had no success in securing a tenant for the building and no rentals were paid on the property to the date of trial. The trial court based this item of special damages solely on rental value as disclosed by the lease agreement with Maxam's.

The evidence reveals that the premises had no rental value and that efforts had been made to lease the premises without success. The trial court's allowance of $346,500 as rental based on the Maxam lease constituted special damages against the surety. Appellant concedes that the measure of damages in such a case might reasonably include a reasonable rental value of the premises for a reasonable length of time. However, it contends, and we agree, that there was no showing as to what the reasonable rental value of the premises was, nor is there any proof as to the reasonable length of time that it normally would require a reasonably prudent owner to have completed the building and secured a tenant therefor. The original contract required completion in 150 days or five months from the furnishing of plans and specifications. The building was 35 per cent complete when abandoned by Peterson, Inc. in October or November of 1962. With this as a criterion a building 35 per cent complete should reasonably have been completed within 150 days from resumption of construction.[2]

The cases cited in the early part of this opinion dealing with the Virginia projects and having to do with the measure of damages in the event of breach of construction contracts are applicable here. Illustrative is the case of Prudence Co., Inc.

v. Fidelity & Deposit Co., 297 U.S. 198, 56 S.Ct. 387, 80 L.Ed. 581, in which the Supreme Court of the United States held that such damages could include a reasonable rental value of the premises during the period of idleness. It is significant to note that the United States Supreme Court in the Prudence case said:

"Another trial will permit the petitioner to show more accurately than it has done upon the record now before us that the building was continuously untenantable until the completion of the work and that the time taken for completion did not outrun the bounds of reason."

It is our opinion that the basis of the court's award in this connection is not founded upon a reasonable period of time nor a reasonable rental value. Accordingly, we sustain appellant's points ten and eleven.

In its final group of points, twelve through fifteen inclusive, appellant assails that part of the Plattsburgh judgment awarding the sum of $172,000 representing unpaid bills for laborers and materialmen. Appellant contends that there is no basis for holding that such bills constitute present liens against the Plattsburgh property and that the surety is not liable for such amount without a showing that Bettes had suffered an actual loss in that amount by reason of said claims.

Appellee counters appellant's contention that it is entitled to the recovery of the $172,000 for the use and benefit of unpaid mechanics and materialmen by virtue of the payment bond executed by appellant which does not require proof of valid liens. We cannot agree with this contention. In his findings of fact the trial court expressly found that the $172,000 item was assessed on the performance bond, as follows:

"As to the job in Plattsburgh, N. Y., Peterson, Inc. and New Amsterdam, as

---

2. The case was tried July 19, 1965, which was approximately two years and eight

months after contemplated completion date under the contract.

surety on the peformance bonds of Peterson, Inc. are liable for the following amounts:

"(a) $172,000 for unpaid bills of laborers and materialmen which are at present a lien against the property and a cloud upon the security."

Thus it is evident that the trial court assessed this element of damages against appellant not on the payment bond, as contended by appellee, but upon the performance bond, and also upon the specific finding that such claims were valid liens against the property. The record does not support the trial court's findings that such amounts are represented by valid liens against the property in New York.

With reference to outstanding bills for labor and materialmen Peterson testified:

"Q. Well, you recognize that you owe a lot of money by virtue of your operation up there in Plattsburgh, don't you?

"A. I owe one hundred forty something thousand dollars.

"* * *

"Q. Who do you owe it to?

"A. I owe it to various subcontractors.

"Q. Well, if they place liens against South Falls property which has to be taken over by Bettes because they can't pay it, don't you think you owe it to South Falls?

"A. I owe the liens, or, rather, L. A. Peterson, Incorporated, does, until such time as it pays them."

His testimony does not establish valid liens as found by the court nor the amounts found by the court.

■ In an effort to prove the amount found as well as validity of liens which might constitute a "cloud upon the security" appellee introduced its Exhibit 26 which is a separate volume containing on the index information with respect to the amounts of the various claims, the date of filing, etc., the total of such being $172,441.41. This, together with lien affidavits, constitutes the sole proof of alleged liens on the property.

Such proof is insufficient to establish the liens under Texas law. Art. 5453, Art. 5455, Vernon's Ann.Civ.St.; 38 Tex. Jur.2d 676; Campbell Bros., Inc v. General Electric Supply Co., Tex.Civ.App., 383 S. W.2d 61, 63.

■ Since the record does not contain any evidence of the requirements of the New York law to establish valid liens we must assume the laws of that state are the same as those of Texas where this litigation was decided. .

■ Since there is no evidence of probative force to support the trial court's findings in regard to valid liens constituting a "cloud upon the security" there is no basis for the judgment based thereon.

■ Moreover, since it is evident that appellee has not recovered such item of damages based upon a payment bond, as it contends, nor "for the use and benefits" of lienholders, such recovery is not justified absent a showing of injury or loss. There is no evidence that appellee has paid any of the alleged claims outstanding which go to make up the disputed element of damages and therefore there is no basis for such recovery by Bettes. Union Indemnity Co. v. Vetter (5th Cir.) 40 F.2d 606.

Appellant's points twelve through fifteen are sustained.

### JUDGMENT

For the reasons stated the judgment of the trial court is reversed and remanded for a new trial.

Reversed and remanded.

## ON MOTIONS FOR REHEARING

The opinion of this court delivered on July 8, 1966 on motions for rehearing is hereby withdrawn and the following substituted therefor.

Appellee Bettes, on rehearing, contends that our judgment should have reformed the trial court's judgment so as to affirm same in two particulars, namely, the item of $80,570 representing the cost of completion of the Virginia Projects, and the item of $119,700 representing the amount required to complete the construction of the Plattsburgh Project. Appellant New Amsterdam concedes liability for the first item of damages and we have overruled New Amsterdam's contention with reference to the second item.

▆▆▆ In view of the fact that New Amsterdam has admitted liability for the sum of $80,570 on the Virginia Projects we have concluded that Bettes' point of error in its motion for rehearing relating to this item should be sustained.

As to that part of the trial court's judgment relating to the Virginia Projects our judgment is, therefore, that the judgment of the trial court insofar as it awards the sum of $80,570 to Bettes is hereby affirmed and that part of the judgment awarding other items of damages is reversed and remanded for a new trial.

▆▆▆ As to that part of the trial court's judgment awarding $119,700 on the Plattsburgh Project in favor of Bettes a different situation is presented. Here New Amsterdam makes no concession but preserves its complaint to our action in affirming this item of damages. The item of $119,700 constitutes one item of an indivisible cause of action for breach on the bond relating to the Plattsburgh Project. Since the item of damages is not severable we include it in that part of the judgment which is reversed and remanded for a new trial. 4 Tex.Jur.2d, § 874, p. 459; Housing Authority of City of Dallas v. Hubbell, Tex.Civ.App., 325 S.W.2d 880; Waples-Platter Co. v. Commercial Standard Ins. Co., 156 Tex. 234, 294 S.W.2d 375; Fisher v. Coastal Transport Co., 149 Tex. 224, 230 S.W.2d 522.

Therefore, as to that portion of the judgment relating to the Plattsburgh Project the same is reversed and remanded for a new trial.

We have carefully considered both appellants' and appellees' second motions for rehearing and, with the exception of the modification as above stated, all points of both motions are overruled.

Appellants' and appellees' motions for rehearing are overruled and the judgment of the trial court is modified and affirmed in part and reversed and remanded in part.