580 P.2d 418

HUNT BROTHERS CONSTRUCTION, INC., an Idaho Corporation, d/b/a Empire Concrete, Plaintiff-Respondent and Cross-Appellant,

v.

Betty Jean WOLCOTT, formerly Betty J. Luttel, a married woman, doing business in her own name, Robert Tredway and Margaret Tredway, husband and wife, Tredway Farms, Inc., an Idaho Corporation, and Harmony Heights Intermediate Care Facility, Inc., an Idaho Corporation, Defendants-Appellants and Cross-Respondents,

and

John E. Luttel, former husband of Betty Jean Wolcott, Gerald Coulter, d/b/a Idaho Consultants Association, Robert B. McFarland and Ruth M. McFarland, husband and wife, Montgomery Ward and Company, Inc., a corporation, Sims Enterprises, Inc., d/b/a Tom's Electric, Tom Donadio, d/b/a Tom Donadio Roofing, Internal Revenue Service, an agency of the United States of America and any and all parties in possession or claiming any right to possession to the real property described in Exhibit "A" attached to the complaint, Defendants-Appellants.

No. 11785.

Supreme Court of Idaho.

June 22, 1978.

242

John W. Walker, Moscow, for plaintiff-respondent and cross-appellant.

Scott W. Reed, Coeur d'Alene, for defendants-appellants and cross-respondents.

SHEPARD, Chief Justice.

This is an appeal from a judgment which denied foreclosure of labor and material liens filed by plaintiff-respondent and cross-appellant Hunt Brothers, Inc. The judgment also awarded damages to defendants and cross-claimants Wolcott et al., who are appellants and cross-respondents here.

Wolcott and the Tredways had provided care for handicapped persons for several years prior to 1972. That operation had utilized mobile homes, but because of new federal and state standards it was decided that the mobile homes would have to be replaced with permanent housing. Wolcott owned land and entered into contracts with Hunt Brothers and others to provide two

buildings. Hunt Brothers was to supply the materials and the labor for the initial phase of the project, which was the installation of concrete footings and basement walls.

Wolcott et al. refused to pay any money to Hunt Brothers for its material and labor, so Hunt Brothers filed labor and materialmen's liens. This action was instituted for the foreclosure of those liens. Wolcott et al. defended on the basis that the construction was not done in a workmanlike manner, was incomplete and was of no value. Wolcott et al. counterclaimed for damages for the loss of use of the two buildings.

Following trial without a jury, the court found the Hunt Brothers' liens against the Wolcott property to be void. The court found that Hunt Brothers had substantially performed its contract for the South Building in a workmanlike manner. The court found certain defects in that building, but found them all remediable and therefore deducted appropriate sums from its otherwise award for the South Building. That net amount was $5,987.60. The court found that Hunt Brothers' portion of the contract for the North Building had not been substantially performed. Some of the defects were remediable, but others were not. It was found that the building did, however, have salvage value, and after appropriate deductions therefor awarded $2,898.80 to Hunt Brothers. Hunt Brothers was also awarded $1,000 for attorney's fees.

The court also found that Wolcott et al. had sustained damage by reason of inability to occupy the buildings when planned and had sustained a loss of profits therefrom. Therefore Wolcott et al. were awarded $11,-125.75 on their counterclaim. Setting off the amounts awarded Hunt Brothers against those awarded Wolcott et al. resulted in a net award to Wolcott et al. of $1,148.35. From that judgment Wolcott et al. appealed and Hunt Brothers cross-appealed.

■ Wolcott et al. assigned error to the finding of the trial court that the South Building had been substantially completed in a workmanlike manner. In connection therewith they assert as error the finding of the trial court that Hunt Brothers took all necessary precautions to keep the concrete in the South Building from freezing and the further finding that it was Wolcott et al.'s responsibility to protect the concrete after its pouring. We find sufficient basis in the evidence for both findings by the trial court.

The testimony indicated that Hunt Brothers observed common trade practices such as adding calcium chloride to the concrete mixture, protecting the concrete with straw and leaving the concrete forms on for an extended period of time. The testimony, albeit conflicting, is sufficient to sustain the ruling that such methods were appropriate to negative the effects of the cold weather.

■ As the experts disagreed as to how to protect the concrete, so they disagreed as to whether defects in the South Building were remediable, the cost of remedying the defects and the value, if any, of the South Building. As to the South Building, the court appears to have accepted the testimony of Mr. Ohashi, a witness for Hunt Brothers. As to the findings of the trial court regarding the North Building, it appears that the testimony proffered by the witnesses of Wolcott et al. was substantially accepted. It is clear from the record that the trial court observed the buildings personally, reviewed the various exhibits and properly exercised its discretion as to which witnesses and testimony it found to be the more credible from among the highly conflicting views and versions of the events. We find no error therein.

We have reviewed appellant's remaining assignments of error and find them to be without merit.

■ We now turn to the cross-appeal of Hunt Brothers wherein it asserts that the trial court erred in allowing damages to Wolcott et al. for their inability to occupy the buildings and their consequent loss of profits. The trial court correctly utilized the language and theory of *Hafer v. Horn*, 95 Idaho 621, 515 P.2d 1013 (1973), and the Restatement of Contracts § 346 (1932) in its calculation of damages relating to the costs

of curing remedial defects in the South Building and also the diminution of value of the North Building by reason of irremediable defects. *See also Trainor Co. v. Aetna Cas. & Surety Co.*, 49 F.2d 769 (E.D.Pa. 1931), *aff'd*, 62 F.2d 487 (3d Cir. 1932), *rev'd on other grounds*, 290 U.S. 47, 54 S.Ct. 1, 78 L.Ed. 162 (1933); *H. P. Droher & Sons v. Toushin*, 250 Minn. 490, 85 N.W.2d 273 (1957); *Robbins v. C. W. Myers Trading Post, Inc.*, 251 N.C. 663, 111 S.E.2d 884 (1960); *Barcroft Woods, Inc. v. Francis*, 201 Va. 405, 111 S.E.2d 512 (1959).

Hunt Brothers was required under its contract to perform only a very limited and initial part of the construction of the buildings. Thereafter other contractors were to complete the buildings. The testimony indicates that the reason the North Building could not be occupied was because of the lack of plumbing, heating and nonfinishing of the interior. Hunt Brothers had no responsibility for those factors in the construction. We also observe that the trial court based its computation on those profits which were anticipated for a nine-month period of time. As is well pointed out by Hunt Brothers, there is no indication as to the beginning or the ending of such a nine-month period of time. The trial court in its memorandum decision indicated that the nine months would be calculated for the period immediately prior to the institution of the time of suit. In its findings of fact the trial court indicated that the nine-month period would begin "after the time of suit." In its conclusions of law, however, the trial court again referred to loss of profits for nine months "up to the time of the suit." We further note that the expected completion date was April 1, 1973, and the suit was instituted July 12, 1973. That lapse of time is, of course, inconsistent with a nine-month period of time utilized in the calculations of the trial court.

We note further inconsistencies and gaps in the evidence which indicate speculation in the trial court's utilization of lost profits as a measure of damages. The testimony as to the costs of operation were speculative, since admittedly they include items for payment of loans for the financing of the buildings—loans, insofar as the record indicates, that never came into existence. Insofar as income was calculated, it included amounts treble the per patient income at the time of trial, which it was anticipated would be received from governmental sources. In any event, it is clear that the new governmental regulations governing the anticipated use of the new facility did not go into effect until July 1, 1973, which may have had a substantial effect on the anticipated income between the expected time of completion and July 1, 1973.

The cause is affirmed on all issues except those damages referred to by the trial court as lost profits, and on that issue is reversed and remanded for a new trial restricted to that issue. No costs allowed.

McFADDEN and DONALDSON, JJ., concur.

BAKES, Justice, concurring in part and dissenting in part:

I concur in that portion of the majority opinion which reverses the decision of the trial court regarding the award of damages for lost profits. However, there are other problems with the decision of the trial court which, in my view, require a retrial on other issues as well.

First, the trial court found that there were actually two separate contracts involved—one for the south building and one for the north building. As to the south building, after discussing the various things which the defendant landowner said were wrong with the construction work which the plaintiff had contracted to do, the trial court found "that plaintiff has substantially performed his contract concerning the South building in a good and workmanlike manner." The trial court then allowed the plaintiff the contract price for the south building, less certain setoffs for work not completed or work improperly completed which would require repair. The important thing is that the trial court found that the plaintiff had substantially performed its contract on the south building in a good and workmanlike manner. Inexplicably, how-

ever, the trial court later found that "[p]laintiff is not entitled to foreclosure of its materialmen's lien [on the south property] because it did not complete the contract and left a substantial amount of the work undone as set forth hereinabove." There is no way to reconcile what the trial court did with regard to the south building. If the court was correct that "plaintiff has substantially performed his contract concerning the South building," then under *Hafer v. Horn*, 95 Idaho 621, 515 P.2d 1013 (1973), the contractor was entitled to a lien on the south building and to have the lien foreclosed. If the plaintiff had not substantially completed the contract on the south building, then he could not recover the contract price, less setoffs, but would at most be entitled to some compensation on a quasi-contractual theory. *See Nelson v. Hazel*, 91 Idaho 850, 433 P.2d 120 (1967).

With regard to the north building, a similar problem exists. The trial court, in its memorandum opinion, concluded that "plaintiff has not substantially performed its contract concerning the north building . . . ." However, the court then proceeded to award plaintiff the contract price for the north building, less the offsets for unfinished items and the cost of repair of work which had been performed defectively. If the court was correct in its conclusion that the plaintiff had not substantially performed its contract concerning the north building, then it could not award plaintiff damages based upon the contract price of the north building. Plaintiff would, at best, be entitled to some quasi-contractual recovery. *Nelson v. Hazel, supra.*

For the foregoing reasons I would reverse the judgment of the trial court and remand for a new trial on the question of damages and materialmen's lien.

BISTLINE, J., concurs.